**Herbert O. JENSEN et al., Appellants,**

**v.**

**Edward J. KLECKER, Joseph H. Havener, Winston Satran, Robert Coad, Gary Hornbacher, Kenneth Schaff, Harold Hoffman, Anton Doll, John R. Hessinger, Alice Ackerman and Mirna Schlosser, Appellees.**

**No. 80–2167.**

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1981.

Decided May 15, 1981.

---

Herbert O. Jensen, Bismarck, N. D., pro se.

Edwin F. Zuern, Sp. Asst. Atty. Gen., Bismarck, N. D., for appellees.

Before LAY, Chief Judge, and STEPHENSON and McMILLIAN, Circuit Judges.

PER CURIAM.

Herbert O. Jensen and Kenneth Hagle, inmates at the North Dakota State Penitentiary[1] appeal from summary judgment

---

1. Kenneth Hagle was recently released from NDSP on parole.

granted in favor of defendants. The decision of the district court is affirmed in part and reversed in part for the reasons stated below.

Jensen and Hagle initiated this pro se action under section 1983 against Edward J. Klecker, Director of the North Dakota Department of Institutions and various other prison officials. Originally, five separate actions were filed but these were later consolidated into one comprehensive complaint. That complaint alleges that Hagle's and Jensen's civil rights were violated in the following ways:

(1) that prison officials regularly open all of plaintiff Jensen's incoming nonlegal mail without his consent and, further, that all prisoners are required to deliver all outgoing mail to the prison mail box so that it may be inspected prior to sealing;

(2) that inmates are routinely required to deliver all outgoing legal mail to a prison official who inspects it in the presence of the inmate then orders the inmate to seal it and then initials it;

(3) that from April, 1976, to February, 1980, prison officials, on nine different occasions, willfully and deliberately opened clearly marked legal mail addressed to Jensen and that the practice is a continuing one;

(4) that prison policy permits prison officials to deduct money from inmate financial accounts without vouchers signed by individual inmates to show accountability;

(5) that on or about December 22, 1978, a package of food mailed to Jensen by his brother was intercepted by prison officials and returned, via mail, to the sender;

(6) that both Jensen and Hagle were deprived of property without due process in that prison officials refused to redeem certain inmate scrip held by them; and

(7) that prison officials are currently in possession of certain items and funds belonging to the Wallstreet Jaycees, an inmate organization that was suspended from operation by prison officials and prison officials have not returned the property nor made an accounting to members of that organization remaining in the inmate population.

After reviewing exhibits and affidavits submitted by the parties the district court granted defendant's motion for summary judgment[2] from which plaintiffs Jensen and Hagle appeal.

Plaintiffs challenge the district court's decision to grant summary judgment on two grounds:

(1) that they received no notice of the court's intention to rule on the request for summary judgment; and

(2) that summary judgment was improperly granted in that there exist genuine issues of fact and that defendants were not entitled to judgment as a matter of law.[3]

## I. Notice.

■ Plaintiff's contention that they were not given notice in accord with *Jensen v. Klecker*, 599 F.2d 243 (8th Cir. 1979) is without merit. *Jensen v. Klecker* involved an earlier dismissal of this case by the district court through granting of a motion to dismiss. This court held that where the trial court considered affidavits outside of the pleadings in ruling on the motion plaintiffs were entitled to notice that the motion to dismiss had been converted to one for

---

2. The district court had previously dismissed the action pursuant to Fed.R.Civ.P. 12(b) for failure to state a claim but in doing so had considered and relied upon matters outside the pleadings without treating the motion to dismiss as a motion for summary judgment and without giving plaintiffs notice of the courts intent to do so as required by Fed.R.Civ.P. 56(c). This court reversed and remanded with instructions to allow plaintiffs an opportunity to file materials in opposition to defendant's

motion and to amend their complaint. *Jensen v. Klecker*, 599 F.2d 243 (8th Cir. 1979).

3. In the brief plaintiffs address other issues which they attempted to include in the complaint by means of a "supplemental complaint." However, it does not appear that plaintiffs obtained leave from the district court to amend the petition nor is there any indication that the court ever recognized or ruled upon those issues.

summary judgment as well as an opportunity to file opposing materials. *Jensen v. Klecker* is inapplicable here since the court in this case ruled upon defendant's motion for summary judgment. Not only did plaintiffs receive notice through the filing of the motion itself but had ample opportunity to file materials in opposition to it as evidenced by their motion and brief filed in response.

## II. Summary Judgment.

■ Summary judgment is granted only where the record clearly demonstrates that no genuine issue of material fact exists and that the movant is entitled, as a matter of law, to judgment in his favor. *Glover v. National Broadcasting Co., Inc.,* 594 F.2d 715, 717 (8th Cir. 1979). It should not be entered unless the movant has established his right to judgment "with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Co. v. Chemical Interchange Co.,* 541 F.2d 207, 209 (8th Cir. 1976). It is, however, up to the party opposing the motion to set forth specific facts showing a genuine issue for trial. *Glover v. National Broadcasting Co.,* 594 F.2d at 717.

### A. Inspection of Inmate Mail.

#### 1. Non-privileged mail.

■ Plaintiffs contend that the routine inspection of incoming and outgoing nonlegal mail constitutes a violation of their civil rights. Defendants concede that all nonlegal mail, both incoming and outgoing, is routinely inspected for contraband. In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) the Supreme Court set down guidelines for determining when the censorships of inmate mail was proper. In doing so the court stated:

[T]he legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence. . . . [I]t is not our purpose to survey the range of circumstances in which particular restrictions on prisoner mail might be warranted by the legitimate demands of prison administration as they exist from time to time in the various kinds of penal institutions found in this country.

*Procunier v. Martinez,* 416 U.S. at 412–13, 94 S.Ct. at 1810–11.

The Supreme Court implicitly approved the opening of non-privileged mail to inspect for contraband in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), decided shortly after *Martinez.* There the Court pointed out "freedom from censorship is not equivalent to freedom from inspection or perusal." *Id.* at 576, 94 S.Ct. at 2984. Non-privileged inmate mail is clearly not immune to inspection, thus such inspections cannot give rise to civil rights violations. *Guajardo v. Estelle,* 580 F.2d 748 (5th Cir. 1978); *Laaman v. Helgemoe,* 437 F.Supp. 269 (D.N.H.1977); *Stover v. Carlson,* 413 F.Supp. 718 (D.Conn.1976); *United States Ex Rel. Dean v. Johnson,* 381 F.Supp. 495 (E.D.Pa.1974). It seems clear under these cases that the mere inspection of nonlegal incoming and outgoing mail poses no threat to plaintiffs' civil rights. Summary judgment on this point was proper.

#### 2. Privileged mail.

■ Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner. *Wolff v. McDonnell,* 418 U.S. 539, 576–77, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935 (1974). Many of the exhibits introduced by plaintiffs as examples of legal mail simply do not appear to come within the parameters of the attorney-client mail privilege. *See Wolff v. McDonnell,* 418 U.S. at 576, 94 S.Ct. at 2984. For example, a letter from the American Civil Liberties Union addressed to President, Wallstreet Jaycees, and bearing no other markings, obviously does not fall within the scope of that privilege. *Wolff* requires that all such mail be specially marked as originating from an attorney, with that attor-

neys name and address.[4] However, one exhibit, a copy of a letter from the National Prison Project, bearing the name of an attorney and which was stamped "Lawyer Client Mail—Do Not Open Except In Presence of Prisoner" and which was addressed to plaintiff Jensen appears to come well within the definition of attorney-client mail. This would tend to rebut defendants' claim that the mail opened was not clearly marked. Coupled with plaintiffs' assertions that the opening of such mail was done deliberately and on a continuing basis, and contrasted with the defendants' vague claim that in the case of clearly marked mail some mistakes were made, this indicates that some factual issues remain to be resolved on this point. Accordingly, summary judgment is vacated as to this issue and the case remanded to the district court for further proceedings.

### B. Interception of food parcel.

■ Plaintiff Jensen complains that a food package sent by his brother was not given to him but was returned, via mail, to sender by prison officials. Defendants do not deny plaintiffs allegations. Affidavits and exhibits indicate that inmates were informed approximately six weeks prior to arrival of package that no more food parcels would be allowed. Institutions may impose restrictions on the receipt of packages from outside the penitentiaries. *Bell v. Wolfish*, 441 U.S. 520, 555, 99 S.Ct. 1861, 1882, 60 L.Ed.2d 447 (1979). *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978). The district court properly granted summary judgment on this issue.

### C. Deductions from inmate accounts.

■ Plaintiff Jensen complains that deducting postage costs above the two free letters per week allowed each prisoner without a signed voucher to show accountability by prison officials deprives him of his property without due process. The depriva-

tion of property without due process is cognizable under section 1983. *Lynch v. Household Finance*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). However, it appears that no basis for recovery exists in this case. Both parties concede that the deductions made from the inmates account are done so in accordance with prison regulations. Exhibits indicate that a log was kept indicating the amount deducted, the date and the destination of each letter or parcel mailed and that inmates are regularly furnished with monthly statements of their account and may obtain copies of the postal log on request.

■ Inmates have no established right to be provided with unlimited free access to the mails. *See Tate v. Kassulke*, 409 F.Supp. 651 (W.D.Ken.1975). It is important to note that this issue does not involve a forfeiture of property or a penalty. Rather, it is in the nature of an assessment for value received. Plaintiffs do not contend that they did not receive the services for which they are charged. Nor do they cite any precedent relating to accountability requirements as they pertain to inmate accounts. Clearly, as the warden indicates in his affidavit, requiring a signed voucher for each postage charge incurred by each inmate would be unfeasible. Not only are there no factual issues remaining to be resolved but there appears no basis for a claim under section 1983. While plaintiffs obviously have a property interest in the funds on deposit in their inmate accounts, they have failed to show that they were unlawfully deprived of their property or that they have been deprived of their property without due process. Summary judgment in favor of defendants on this issue was proper.

### D. Matters pertaining to the Wallstreet Jaycees.

The two remaining claims of plaintiffs deal with matters relating to the Wallstreet

---

4. *Wolff* also permits prison authorities to require that a lawyer desiring to correspond with a prisoner first identify himself and his client to officials to verify that the letters marked privileged are actually from members of the bar.

*Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). But there is no indication that prison officials required that in this case.

Jaycees. The Wallstreet Jaycees was an inmate organization which, as part of its fundraising activities, was permitted to operate the inmate commissary concession stand. To purchase items from the concession stand inmates were permitted to purchase Jaycee scrip since inmates are not permitted to have currency in their possession. Each book of scrip issued bears the prisoner's name, identification number and date of issue. Each ticket is stamped with the prisoner's penitentiary identification number. Tickets are non-negotiable if detached from the ticket book and the scrip is non-transferable. All legitimate transfers of scrip were logged at the time of purchase at the concession stand. The Wallstreet Jaycees were suspended from operation by the prison administration for activities in violation of prison regulations, e. g., depletion of funds. The organization's charter was subsequently revoked by the state and local Jaycee organizations. Affidavits introduced by defendants indicate that a new Jaycee organization is in the process of being formed.

### 1. Unauthorized scrip.

■ This claim arose when prison officials determined that all unused, authorized scrip held by inmates would be redeemed. The term "authorized" refers to scrip bearing the identification number of inmate holding it. Plaintiffs demand to be reimbursed for all scrip held by them. They do not contend that it is authorized. Instead, they maintain that, apparently by virtue of possession, they are entitled to redemption. Refusal to redeem the scrip, according to plaintiffs, amounts to a deprivation of property without due process. In *Sell v. Parratt*, 548 F.2d 753 (8th Cir. 1977), *cert. denied*, 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 152, this court found a cognizable claim under section 1983 where money held by inmates in violation of prison regulations was confiscated and deposited in the Inmate's Welfare Fund. We found that while the regulations prohibited inmates from possessing currency, they did not authorize the forfeiture of currency illegally possessed and upheld the district court order

requiring the money credited to the account of the incarcerated plaintiff. This case differs in that here plaintiffs assert a property right in the redemption of unauthorized scrip which is by prison regulation void if held by anyone other than the inmate to which the scrip was issued. It appears that plaintiffs failed to show a valid property right, much less a deprivation. *Holder v. Claar*, 459 F.Supp. 850, 852 (D.Colo.1978). The district court was correct in granting summary judgment.

2. Finally, plaintiffs theorize a violation of their civil rights in that prison officials at the time of the administrative suspension of the Wallstreet Jaycees confiscated concession stand equipment belonging to the organization and the organization's treasury. Plaintiffs seek an accounting. Defendants in their motion for summary judgment assert that prior to bringing this action plaintiffs failed to request a formal accounting, but that in any event one has since been provided through interrogatories. Affidavits and exhibits submitted by defendants show that $765.82 is on deposit in the Wallstreet Jaycee savings account in the Bank of North Dakota and $86.27 in a business account at the North Dakota State Penitentiary and that the concession equipment is in storage at the penitentiary. Defendants maintain and introduce supporting affidavits to show that the charter of the Wallstreet Jaycees has been terminated by both the state and national organizations and that a new Jaycee organization is being formed. Defendants state that once a new Jaycee organization has been formed all assets of the now defunct Wallstreet Jaycees will be transferred to the new organization. It is difficult to see how plaintiffs have been harmed. There appears to be no actual deprivation of property here and in any event it would seem that plaintiffs have already gotten the accounting they requested. Defendants are entitled to summary judgment on this issue.

Accordingly, summary judgment with regard to the issue of attorney-client mail is hereby vacated and the issue remanded for further proceedings. The district court's

granting of summary judgment as to the other issues discussed above is hereby affirmed.