**Victor James HARROD, Jr., Appellant,**

v.

**Sally HALFORD and Steve R. Foree, Jail Superintendent, Appellees.**

No. 85–1060.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1985.

Decided Sept. 20, 1985.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 26, 1985.

Gary L. Dolan, Lincoln, Neb., for appellant.

Michael E. They, Lincoln, Neb., for appellees.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

PER CURIAM.

██ This is a jail inmate mail case. Victor James Harrod, Jr. argues that the mail policy which allows jail officials to open legal mail outside his presence if it is not marked privileged, or with similar markings, violates his first, sixth and fourteenth amendment rights. The district court[1] held that the mail policy was not unconstitutional, and since the letters involved in this dispute were not properly marked there was no violation of Harrod's rights. We affirm.

---

**1.** The Honorable Warren K. Urbom, Chief Judge, United States District Court, District of Nebraska.

Harrod was incarcerated in the Lancaster County Intake and Detention Facility as a pre-trial detainee from September, 1983 until March, 1984. While he was in jail he received numerous pieces of mail. The mail policy states that general mail will be opened outside the inmate's presence and searched for contraband, but will not be read. Letters from designated sources (legal mail), such as attorneys, courts and government officials, which are marked confidential, attorney/client privilege, or with some similar marking, are opened only in the presence of the inmate, but again are not read by jail officials. Harrod appears to have received eight pieces of mail from the clerk of the district court, one from a district judge, four from a magistrate, one from the United States Department of Justice, three from the Lancaster Corrections Department, one from the Bureau of Community Correctional Services, and five from a law firm. Each letter was clearly marked with a return address from a legal source, but none was stamped confidential. (Three were marked "priority mail.") Communications from federal court officials were mailed in franked envelopes which under the respective return addresses bore in small print the legend "Official Business—Penalty for Private Use $300." In conformity with the mail policy, jail officials opened the letters outside Harrod's presence to inspect for contraband. Harrod argues that opening these letters outside his presence violated his constitutional rights.

He argues that since the letters were clearly from legal sources the requirement that the letters be specially marked "confidential" or with similar markings is an unnecessary burden on his constitutional rights. He alleges that it interferes with the sender's intended communication, in violation of his first amendment rights, and that it is an unnecessary burden on his sixth and fourteenth amendment rights to effective counsel and access to the courts. Harrod does not dispute that the jailers have the right to open his letters to look for contraband. He argues only that mail from a legal source is almost always confidential, and therefore requiring special markings is an unnecessary burden on his constitutional rights.

The purpose of opening mail in the inmate's presence is to protect his attorney/client privilege and to protect the confidentiality of other legal matters. The inmate is assured that his mail has not been read when the letters are opened in his presence. Jailers are not required to take the extra time and effort to open mail in the inmate's presence when the mail is not confidential.

The leading case in the law of prisoner mail is *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in which the Supreme Court determined that letters from attorneys to inmates could be opened in the presence of the inmate. The Court stated that the State could "require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first* identify himself and his client to the prison officials, to assure that the *letters marked privileged* are actually from members of the bar." *Id.* at 576–77, 94 S.Ct. at 2984–85 (last emphasis added). As this passage indicates, prison officials would be justified in requiring that confidential or privileged mail be first cleared through the prison by a letter addressed to the authorities, a far greater burden than the special markings on envelopes requested in this case. Furthermore, the phrase "the letters marked privileged" indicates that the Supreme Court contemplated that not all letters from attorneys would be privileged, and those that are confidential must be specially marked. Finally, the Supreme Court noted in *Wolff* that the "petitioners, by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires." *Id.* at 577, 94 S.Ct. at 2985. The defendants' mail policy is well within the scope of *Wolff v. McDonnell.*

In *Jensen v. Klecker,* 648 F.2d 1179 (8th Cir.1981), the court discussed two letters which were mailed to inmates. One letter was from the National Prison Project, had the name of an attorney marked on it, and was stamped "Lawyer Client Mail—Do Not Open Except in Presence of Prisoner." A second letter from the American Civil Liberties Union was addressed to President, Wallstreet Jaycees (an inmate organization) and had no other markings. The court held that the first

letter should have been opened only in the presence of the inmate, and that the second letter obviously did not come within the scope of the attorney/client privilege. *Id.* at 1182–83. Although the letters in the present case are distinguishable because they are clearly marked as being from attorneys or courts, and were addressed to a named inmate, *Jensen* nevertheless demonstrates that the mere fact that a letter comes from a legal source is insufficient to indicate that it is confidential and requires special treatment. Even *Taylor v. Sterrett,* 532 F.2d 462 (5th Cir.1976), which is cited by Harrod, states that prison officials can require more than simply that the letter carry the return address and name of an attorney. The court there approved a method by which an attorney who wished to correspond confidentially with an inmate had to enclose his confidential letter inside a larger envelope containing a signed cover letter identifying himself to the prison officials. *Id.* at 475 n. 20.

The requirement that letters be marked confidential is a lighter burden on Harrod's constitutional rights than is the requirement that a writer send a cover letter identifying himself and his client. The defendants' mail policy requirement serves a valid purpose since not all letters from legal sources are confidential, and, as the testimony showed, letters marked confidential were unlikely to contain contraband such as checks from attorneys. We also note that under the mail policy it is the writer who determines whether the legal mail is confidential or privileged, not the jail authorities. The burden placed on Harrod's constitutional rights is well within accepted bounds and indeed the mail policy is fully consistent with the judicial observation that "... a rule could be promulgated that any correspondence from legal counsel which is marked 'Privileged' will be opened and inspected for contraband, but only in the presence of the inmate." *Moore v. Cic-*

*cone,* 459 F.2d 574, 578 n. 1 (8th Cir.1972) (en banc) (Lay, Heaney, Bright, Ross concurring). We hold the mail policy does not violate constitutional rights.

 Finally, we hold that the word "priority" stamped on the letters was insufficient to give the jail officials notice that the letter was confidential. It is commonly understood that the word "priority" stamped on mail means the letter is to go by the fastest mail route. The letters did not comply with the mail policy and therefore the jail officials did not violate Harrod's rights by opening the letters outside his presence to search for contraband.[1]

Affirmed.

---

**1.** While we have not seen fit on the record now before us to strike down on constitutional grounds the present mail policy of the defendants, we observe that administration of the policy produces errors, and that for practical administrative reasons as well as future constitutional safeguards the defendants may wish to consider whether, absent unusual circumstances, incoming mail marked as "Official Business" from a federal or state court or envelopes bearing the return address of a court clerk or judicial officer should only be opened for contra-

band inspection, assuming other means to inspect the contents of sealed envelopes is unavailable, *see Moore v. Ciccone,* 459 F.2d 574, 578, n. 1 (8th Cir.1972), in the presence of the inmate. *Cf. Holt v. Hutto,* 363 F.Supp. 194 (E.D. Ark.1973), *aff'd in part, rev'd and remanded in part sub nom. Finney v. Arkansas Board of Correction,* 505 F.2d 194 (8th Cir.1974), *aff'd on remand Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977), *aff'd Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).