_____

No. 96-1022
_____

Clyde Weiler,                         *
                                      *
              Appellee,               *
                                      *  Appeal from the United States
    v.                                *  District Court for the
                                      *  Eastern District of Missouri.
James Purkett; Leah Embly,            *
                                      *
              Appellants.             *


_____

        Submitted:  September 13, 1996

          Filed:  January 3, 1997
_____

Before BEAM, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     James Purkett and Leah Embly appeal from the district court's denial
of their second summary judgment motion in this case challenging the mail
rules at the Farmington Correctional Center.  Clyde Weiler brought this
civil rights suit under 42 U.S.C. § 1983 (1994), claiming that the
defendants violated his First Amendment rights by confiscating a package
his son mailed to him at Farmington.  Purkett and Embly initially moved for
summary judgment, which the district court granted.  We reversed.  After
remand, Purkett and Embly filed a second motion for summary judgment.  This
motion included supplementary affidavits, which they contend resolve the
factual issues that prevented them from getting summary judgment on their
original motion.  The district court denied their second motion, and we
affirm.


     In September 1991, a package arrived at Farmington addressed

to Clyde Weiler, an inmate.  The package came from Weiler's son.  It was labeled "legal papers," and contained legal files and a trial transcript of the case on which Weiler was in jail.  Pursuant to the Farmington mail procedures, the Farmington mailroom supervisor, Leah Embly, sent Weiler a notice telling him that his package had been confiscated and giving him options for disposing of the package.  The package was never delivered to Weiler.

Farmington mail policies distinguished packages from other types of mail and regulated more strictly the circumstances under which inmates could receive packages.  Generally, inmates could only receive packages that came directly from an approved vendor, except that an inmate about to be released could receive packages of street clothes from other sources, and the Farmington Superintendent could approve other types of packages in advance of their receipt.  Purkett approved the mail policy as Institution Head at Farmington.  Weiler's package did not fall into any of the permitted categories so Embly confiscated it.  Weiler sued under section 1983, alleging violation of his First Amendment and various other constitutional rights.

Embly and Purkett moved for summary judgment.  Weiler opposed the motion by filing an affidavit signed by ten Farmington inmates averring that each of them had received packages containing legal papers from friends or family through the Farmington mailroom.

The district court granted Embly and Purkett's motion.  We reversed. Weiler v. Purkett, No. 93-2041 (8th Cir. Jan. 23, 1995).  We held that the affidavits from the ten inmates indicating that the package policy was widely disregarded raised a material issue of fact as to whether the Farmington package regulations were arbitrary and not reasonably related to a legitimate government interest.  Slip op. at 5 (citing Griffin v. Lombardi, 946 F.2d 604, 607-08 (8th Cir. 1991), and Thongvanh v. Thalacker, 17 F.3d 256, 259 (8th Cir. 1994)).  We also held that Embly and Purkett were not

entitled to qualified immunity because the conflicting affidavits created an issue of fact about whether it would have been reasonable for them to believe that their actions did not violate Weiler's First Amendment rights. Id.

On remand, Embly and Purkett again moved for summary judgment, supplementing the record with their separate affidavits stating in substantially identical language:

> I have never made a policy decision . . . that [the package policy] should not be applied to unauthorized packages received by some inmates.
>
> To my knowledge there has never been an exception made to these policies either officially or unofficially. If any inmate had received an unauthorized package, it would have been as a result of human error and not due to a policy decision to exempt certain inmates or packages from the operation of [the policies].

Purkett also argued that Weiler's claim against him could only be founded on a respondeat superior theory, which is not actionable under section 1983.

The district court denied the second motion. The court held that the affidavits do not resolve the factual disputes about the reasonableness of the package policy that were raised by the evidence of irregular enforcement of the policy. The same factual issue that precluded summary judgment on the merits also precluded summary judgment on the qualified immunity claim. The court rejected Purkett's respondeat superior argument because Weiler attacked the reasonableness of the regulation itself, which Purkett had personally approved, thus providing a basis for personal, rather than respondent superior liability.

We conclude that the new affidavits do not resolve the factual issues on which we based our first decision.

We review the district court's grant of summary judgment de novo. See Uhl v. Swanstrom, 79 F.3d 751, 754 (8th Cir. 1996). Summary judgment is appropriate when there is no material issue of fact and when the moving party is entitled to judgment as a matter of law. Id.

Purkett and Embly argue that their affidavits establish that any irregular application of the package policy had nothing to do with them. This argument fails for two reasons. First, Weiler's evidence tends to prove that exceptions were being made to the policy. Purkett and Embly's affidavits contradict that evidence by indicating that there has never been an official or unofficial deviation from the policy, hence perhaps no deviation at all. Obviously, on summary judgment motion we may not resolve this conflict in evidence about whether exceptions have or have not been made. Second, to the extent that Purkett and Embly admit that exceptions could have been made, but deny knowledge of any exception, Purkett and Embly are again asking us to resolve a factual issue in their favor. Evidence of a pervasive practice at Farmington can support an inference that they did know of the practice, despite their affidavits to the contrary. They argue that they are not responsible for other people's errors, but this is beside the point; the theory we reversed on before was not that deviations from the package policy were actionable, but rather that widespread deviations created a factual issue as to whether the policy was reasonably related to a legitimate government interest. Weiler, slip op. at 5.

Similarly, Purkett's argument about respondeat superior misconceives the theory of the case. He is not potentially liable for the acts of others, but for his own acts in approving and maintaining regulations that could be found to be arbitrary. Therefore, Weiler's claim against him does not depend on respondeat superior principles.

As we held in the first appeal, the same factual issues that preclude summary judgment on the merits also preclude summary judgment on the ground of qualified immunity.  See slip op. at 5; Griffin, 946 F.2d at 608; see generally Greiner v. City of Champlin, 27 F.3d 1346, 1352 ("[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.").

Finally, Purkett and Embly attack Weiler's access to courts claim. The district court noted that they had not raised that theory before the district court in their second motion.  This being the case, we need not consider an argument on appeal that they did not present to the district court.

We affirm the judgment of the district court.

BEAM, Circuit Judge, dissenting.

A funny thing happened to this case on the way to this forum: a metamorphosis occurred.  Whether analyzed in its present or original formulation, however, the matter should be reversed and dismissed. Accordingly, I dissent.

## I.  BACKGROUND

Weiler is an eighty-two-year-old sex offender who is incarcerated in Missouri after conviction in 1989, at age seventy-three, of one count of sodomy and two counts of first degree sexual abuse of a ten-year-old female child.  He had apparently been abusing her since she was seven.  State v. Weiler, 801 S.W.2d 417, 418 (Mo. Ct. App. 1990).  Since being incarcerated, he has become

a frequent litigator in federal court.[1]

The major allegation in Weiler's initial complaint was summarized by the district court in its order preceding Weiler's first appeal, <u>Weiler v. Purkett</u>, No. 94-204, 1995 WL 21660 (8th Cir. 1995) (per curiam) (<u>Weiler I</u>) as follows: "defendants wrongfully confiscated and destroyed a package that contained legal materials [Weiler] needed in order to pursue post-conviction relief procedures." <u>Weiler v. Purkett</u>, No. 91-2294 C(2), mem. op. at 3 (E.D. Mo. Oct. 14, 1992).

The package was, without dispute, marked "From R. Weiler" who is allegedly Weiler's son. He is not a lawyer, judge or other public official. Weiler contends that the parcel was also labeled "legal mail" (the court in its current opinion says "legal papers") and such allegation must be taken as true at this stage of the litigation. The contents, according to Weiler, were a trial transcript and, perhaps, other legal papers which Weiler wanted to use to prepare an additional state court postconviction pleading and/or a federal habeas petition.

There is also no dispute that Embly, the prison mailroom supervisor, confiscated the package and sent Weiler a contraband notice. The notice gave him at least four choices for disposition

---

[1] <u>See</u> <u>Tyler v. Carnahan</u>, No. 94-CV-17 (E.D. Mo. filed January 6, 1994) (Weiler participating as one of many plaintiffs, filing numerous pro se motions); <u>Weiler v. Purkett</u>, No. 93-CV-2260 (E.D. Mo. filed October 22, 1993); <u>Tyler v. Perry</u>, No. 93-CV-939 (E.D. Mo. filed April 23, 1993) (Weiler participating on claim that confiscation of his property violated Constitution); <u>Weiler v. Purkett</u>, No. 92-CV-1082 (E.D. Mo. filed June 10, 1992); <u>Tyler v. Ashcraft</u>, No. 92-CV-1386 (E.D. Mo. filed July 16, 1992) (Weiler, one of the plaintiffs, submitted multiple pro se filings until court ordered clerk to accept no more filings from individual litigants; Weiler's continuing filings not accepted thereafter); <u>Weiler v. Purkett</u>, No. 91-CV-2294 (E.D. Mo. filed November 8, 1991).

of the mailing: it could be returned by mail to the sender if Weiler provided the postage; he could have someone who visited him remove the package from the prison; he could have the package destroyed; or he could pursue an appeal of the confiscation within the procedural framework set forth in the prison rules. He availed himself of none of these opportunities and the package was destroyed by prison officials. Some months later, the state provided Weiler with another copy of the destroyed transcript.

Although the nature of his claims was not completely clear from the pleadings, the district court assumed that Weiler was asserting a two-pronged First Amendment violation, an abridgement of his right to receive mail and interference with meaningful access to the court. Both of these interests are protectible under the Constitution.

Regulations relevant to these rights were in place at Farmington. Incoming "privileged mail" may be received from "`judges, attorneys, courts, elected government officials, departmental and divisional administrators . . . [as] determined by the return address.'" Id. at 8 (quoting MDCHR Procedure for Inmate Mail. No. IS13-1.1(II)(B)) (emphasis added). Packages, on the other hand, received for delivery to an inmate "`must be from an approved vendor, except packages containing dress-out clothing for inmates scheduled for release from the institution within 30 days, and those [packages] previously approved, in writing, by the Superintendent." Id. at 9 (quoting FEE Standard Operating Procedure No. 13-1.1(III)(E)). There is no dispute that "R. Weiler" is not an approved vendor as contemplated by the regulation. Neither was the package preapproved by the superintendent.

The dispute reached the district court on cross-motions for summary judgment. The defense raised by Embly and Purkett was based upon qualified immunity.

It is clear that Weiler did not, in any motion or paper placed before the district court prior to Weiler I, attack the validity of these regulations. He challenged only their application to his particular package because of his claim that it was marked "legal mail." Thus, the district court assumed the validity of the relevant regulations. Id. at 10. The district court, finding no underlying constitutional misconduct, dismissed the case. Id. at 13, 16. Applying Pletka v. Nix, 957 F.2d 1480, 1485 (8th Cir. 1992), the court asserted that it need not discuss the issue of qualified immunity. Memo. Op. of Oct. 14, 1992 at 13.[2]

In Weiler I, Weiler appealed the district court's dismissal. Counsel was appointed and briefing was completed. On appeal, Weiler still made no claim that the Farmington mail regulations violated the Constitution (or any other particular standard). His argument on appeal was twofold: one, that since his package was marked "legal mail," its destruction violated his First Amendment right of access to the courts;[3] and, two, that the prison regulations themselves were violated because they did not provide for destruction of a confiscated package. There was not a word in Weiler's briefs challenging the validity of the mailroom regulations. Indeed, Weiler explained that he "is not challenging

_____

[2]It was probably error for our ruling in Weiler I not to have at least remanded the case to the district court for a ruling on the qualified immunity defense rather than making a peremptory ruling on that issue at the appellate level. Ford v. Dowd, 931 F.2d 1286, 1294 (8th Cir. 1991).

[3]The district court noted in its October 14, 1992, order of dismissal that Weiler's meaningful access claim was without merit because he had not demonstrated that he had suffered prejudice from the nondelivery as required by our jurisprudence. Berdella v. Delo, 972 F.2d 204, 210 (8th Cir. 1992). Since the state has provided Weiler with another copy of the transcript, it is doubtful that prejudice can be shown. Weiler has not renewed this claim in the current appeal by attempting to demonstrate specific prejudice as required by Berdella or by otherwise arguing this district court decision.

-8-

the constitutionality of the [Farmington] procedure; he is challenging the application of the policy to his package." Reply Brief of Appellant in 93-2041 at 5. Nonetheless, the court in Weiler I ignored the "regulation validity" stance of Weiler and held that an affidavit of ten other inmates that they had purportedly received legal mail packages from friends and relatives, created for Weiler a fact question as to the constitutional validity of the Farmington mail regulations. The court first framed the issue as to whether "the affidavit . . . created an issue of fact as to whether defendants neutrally applied the regulation." Weiler I at *1-2.[4] Then, although the regulations were not challenged by Weiler, the court on its own transformed the dispute into a rules validity question saying: "We hold that Weiler presented sufficient evidence to withstand summary judgment; the affidavit signed by the ten inmates raised a material issue of fact as to whether the package regulations are arbitrary and not reasonably related to a legitimate government interest." Id. at *2. The court, without analysis, declared that the defendants were not entitled to qualified immunity, although, as earlier indicated, the district court had not made a determination on that issue. Id.

Upon remand to the district court through Weiler I, Embly and Purkett renewed their request for summary judgment on the basis of qualified immunity. They filed additional affidavits, not rebutted by Weiler, stating that neither of them participated in or had knowledge of any misapplication of prison mail regulations with regard to the ten inmates.

Noting that these "statements [by Embly and Purkett] do not

---

[4]Weiler has, however, never asserted an equal protection allegation and the court has not recognized such a claim in either of its opinions. In any event, it would have been frivolous to assert such a position under the undisputed facts of this action.

address whether the [package] regulation itself [is] reasonable," the district court denied the motion for summary judgment. <u>Weiler v. Purkett</u>, No. 91-2294 C(2), memo. op. at 9 (E.D. Mo. Nov. 17, 1995). Embly and Purkett again appeal.

## II. DISCUSSION

### A. Procedure

We reach the basic constitutional issues upon a denial of summary judgment only because of the qualified immunity defense asserted by the defendants. The threshold question underlying a qualified immunity claim is whether the plaintiff has alleged a constitutional violation at all. <u>Thomas v. Hungerford</u>, 23 F.3d 1450, 1452 (8th Cir. 1994) (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)). Then, if a constitutional violation has occurred, a concomitant question must be answered: was the constitutional right clearly established at the time the defendants acted with regard to Weiler's package? <u>Siegert</u>, 500 U.S. at 233. Thus, the first consideration is whether Weiler has alleged a violation of any constitutional right in the first instance.

### B. Constitutionality of the Rules

It is, as the court stated in <u>Weiler I</u>, well settled that an inmate has a First Amendment right to receive mail. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 405 (1989). Likewise, the First Amendment generally protects a prisoner's access to the courts via the mail. <u>Bounds v. Smith</u>, 430 U.S. 817, 819 (1977). These constitutional rights may, however, be limited by prison regulations that are reasonably related to legitimate penological interests. <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>Thongvahn v. Thalacker</u>, 17 F.3d 256, 258-59 (8th Cir. 1994). While <u>Turner</u> sets out four factors for consideration of the validity of prison regulations, we need not concern ourselves with them here. The Supreme Court in <u>Wolff</u>

-10-

v. McDonnell, 418 U.S. 539, 576-77 (1974), has said:

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials to assure that the letters marked privileged are actually from members of the bar.

Id. (emphasis supplied) (original emphasis omitted).

So, it is abundantly clear that the Farmington legal mail rule, being even more generous to inmates than the Wolff requirements, passes constitutional muster as a matter of law. Since the package came from a family member, not a person or entity specified in the rule, it was not legal mail. I do not understand that either the court or Weiler now contends otherwise.

The next question, then, is whether the Farmington package policy violates the Constitution. For this inquiry, we start with Bell v. Wolfish, 441 U.S. 520 (1979) wherein the Supreme Court validated a total ban on the receipt of packages containing food or personal property except for one package of food at Christmas,[5] saying, "[i]t is all too obvious that such packages are handy devices for the smuggling of contraband." Id. at 555. This court, applying Bell in Jensen v. Klecker, 648 F.2d 1179 (8th Cir. 1981), recognized this holding when we said "[i]nstitutions may impose restrictions on the receipt of packages from outside the penitentiaries." Id. at 1183.

---

[5]I assume that there is no dispute that the contents of Weiler's package contained his "personal property." We have frequently labeled legal materials as "personal property." See Noorlander v. Ciccone, 489 F.2d 642, 651 (8th Cir. 1973).

-11-

Other circuits have reached the same result.  In <u>Scalice v. Davies</u>, No. 92-36909, 1994 WL 192430 (9th Cir.), <u>cert. denied</u>, 115 S. Ct. 270 (1994), the Ninth Circuit affirmed a grant of summary judgment in favor of a mailroom clerk who had confiscated a package sent to an inmate.  The court held, "[e]nforcement of prison regulations which prohibit a prisoner from receiving materials that are not shipped directly from a publisher or retailer does not violate clearly established [constitutional] rights." <u>Id.</u> at *2.

So, the package rule in play in this litigation is clearly constitutional as a matter of law.  Weiler recognized as much until our erroneous opinion in <u>Weiler I</u> prompted him to change his stance in this later appeal.

As earlier noted, Weiler filed an affidavit of ten Farmington inmates claiming that on unspecified dates under unstated circumstances from unidentified mailroom personnel each of them had received legal papers and transcripts from "family or friends."  Applying <u>Griffin v. Lombardi</u>, 946 F.2d 604 (8th Cir. 1991), the court, in <u>Weiler I</u> and in this opinion, holds that this affidavit is sufficient to subject a package regulation that otherwise passes constitutional muster under Supreme Court edict to "factual" uncertainty as to its reasonableness.  This rationale simply misapplies <u>Griffin</u> and the law of this circuit.

<u>Griffin</u> relates to <u>subject matter</u> and not the mode or procedure applicable to receipt or distribution of the prison mail, whatever its contents may be.  We held that Griffin had the right to receive his original college diploma and grade transcript via a mailing that otherwise complied with procedural regulations.  <u>Id.</u> at 607.  We likened the issue to the total ban on Aryan Nations white-supremacy material invalidated in <u>Murphy v. Missouri Department of Corrections</u>, 814 F.2d 1252 (8th Cir. 1987).

Here, however, there is no dispute that Weiler is entitled to

receive "legal mail."  He must, however, receive it under the rules established by Farmington, rules which the Supreme Court has said are constitutionally valid.  <u>Wolff</u>, 418 U.S. at 577.  Weiler (and the court) now questions the reasonability of a "package rule" which Weiler seeks to manipulate to evade the  "legal mail" rule in place at Farmington.  In essence, Weiler is simply frustrated at his inability, until the court intervened, to exploit the mail regulations to his advantage.  Weiler has a right to receive mail and to access the court but not on his own terms.  He must do so under rules designed to limit the flow of contraband into the prison.

Like the legal mail regulation at Farmington, the package rule exceeds, in favor of inmates, package regulations validated in <u>Bell</u> and <u>Jensen</u>.  And, violation of a state prison regulation that exceeds the requirements of the Constitution does not support a 42 U.S.C. § 1983 claim.  <u>Brown v. Nix</u>, 33 F.3d 951, 954 n.2 (8th Cir. 1994).  Accordingly, I disagree with the holding of the court with regard to Weiler's new challenge to the reasonability of the Farmington legal mail or package policies.

Whether the ten inmates, in violation of the mailing procedures at Farmington, did or did not receive legal papers mailed by relatives and friends is, of course, a factual question.  The "ultimate conclusion as to constitutionality" of a regulation is, however, a question of law.  <u>Hill v. Blackwell</u>, 774 F.2d 338, 343 (8th Cir. 1985).  So, assuming, for sake of argument, that ten inmates did receive legal papers from relatives and friends, the question remains, in the final analysis, whether this court, with the Supreme Court's guidance, finds, as a matter of law, that the mail regulations at Farmington pass or fail constitutional muster.  Under Supreme Court precedent, we must find they do.  Even if 100 inmates had received religious literature, college diplomas, or legal papers through a negligent, or even willful, breakdown in mailroom procedures, and were willing to state so by affidavit, the

reasonableness of legal mail or package regulations, designed to control receipt of contraband to inmates, would be no less constitutional.

### C.  Qualified Immunity

The defendants claim that they are entitled to qualified immunity. That means, of course, that even if the mail rules are somehow of questionable constitutionality, which they are not, immunity extends to the defendants if "their conduct does not violate <u>clearly established</u> . . . constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (emphasis added).  A right is "clearly established" for qualified immunity purposes if

> [T]he contours of the right [are] sufficiently clear that a reasonable official would understand that what [she] is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent.

<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) (citation omitted).

Whether a constitutional right is clearly established, is a question decided under an objective standard.  "Its application to a particular defendant's conduct is a question of law that ordinarily should be decided by the court long before trial."  <u>Swenson v. Trickey</u>, 995 F.2d 132, 133 (8th Cir.) (citations omitted).  Thus, to remand this case for trial on substantive section 1983 issues because there is a purported fact question on the reasonability of a prison mail regulation, the language of which is undisputed and which the Supreme Court, through established precedent, has validated, is a difficult result to understand.

"The threshold [legal] question in analyzing a qualified immunity claim is whether the plaintiff has alleged a constitutional violation . . . at all." Thomas v. Hungerford, 23 F.3d 1450, 1452 (8th Cir. 1994) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Then, if a constitutional violation has occurred, a concomitant question of law must be determined: was the constitutional right, as defined by Anderson v. Creighton, clearly established at the time the defendants acted with regard to Weiler's package? Siegert, 500 U.S. at 232.

Given the holdings in Turner, Thongvahn, Scalice, Wolff and Jensen and numerous other cases in this and other circuits, the answer to both questions must be a resounding "no."  The defendants are clearly entitled to qualified immunity.

## III.  CONCLUSION

The Farmington mail regulations pass, as an initial matter, constitutional muster and, if they arguably do not, confiscation and destruction of Weiler's package did not abridge rights that were so clearly established that a reasonable mailroom attendant and prison superintendent would have understood that a violation was occurring.  Thus, the holding of the district court should be reversed and the case dismissed.  I dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-