**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-1022

———————

Clyde Weiler,                          *
                                       *
           Appellee,                   *
                                       *  Appeal from the United States
      v.                               *  District Court for the
                                       *  Eastern District of Missouri.
James Purkett; Leah Embly,             *
                                       *
           Appellants.                 *

———————

Submitted: September 9, 1997
Filed: March 2, 1998

———————

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, McMILLIAN, JOHN R. GIBSON,
     FAGG, BOWMAN, WOLLMAN, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD,
     and MURPHY, Circuit Judges, en banc.

———————

BEAM, Circuit Judge.

In this six-year-old section 1983 lawsuit, Clyde Weiler asserts that the defendants, prison officials at the Farmington, Missouri Correctional Facility, violated his constitutional rights when they refused to deliver a package to him that did not conform to prison regulations. A panel of this court affirmed the district court's denial of summary judgment based on qualified immunity. Our decision to grant en banc review vacated that opinion. See Weiler v. Purkett, 104 F.3d 149 (8th Cir. 1997). We now reverse.

I. BACKGROUND

This case involves two rules regarding inmate mail within the Missouri state prison system. One allows inmates to receive packages only, with certain limited exceptions not relevant here, from attorneys and approved vendors. A second regulation affords special treatment for "privileged mail" but limits that category to correspondence to or from judges, attorneys, courts, or government officials. On September 11, 1991, the Farmington, Missouri Correctional Center (Farmington) received a package addressed to inmate Clyde Weiler. Interpreted in the light most favorable to Weiler, the record indicates that the package was marked "legal materials" and the sender was Weiler's son, who is not a judge, attorney, or governmental official. Leah Embly, the mailroom supervisor, did not deliver the package because it was neither privileged mail nor from an approved vendor. Instead, she delivered a "contraband receipt" informing Weiler that a nonconforming package addressed to him had been received, and requesting directions on how he wished to have the property dispatched.[1] Weiler sued Embly and James Purkett, the prison superintendent, under 42 U.S.C. § 1983, seeking six million dollars in damages.[2]

Defendants moved for summary judgment, claiming qualified immunity. In opposition, Weiler filed an affidavit signed by ten inmates asserting that they had received packages from family members containing legal materials. The district court granted the defendants' motion for summary judgment. Weiler appealed. A divided

---

[1]Farmington regulations provide that an inmate who has been mailed contraband may pay to have the item mailed to another party, may send the property out with a visitor, or may direct the mailroom to donate the property to charity or to destroy the offending item. When Weiler did not respond, the package was destroyed.

[2]When Weiler discovered that the package had been destroyed, he filed a second suit against these defendants and their counsel. That suit was consolidated with this one in Weiler v. Purkett, Nos. 94-1665/93-2041, 1995 WL 21660, at *2 (8th Cir. 1995) (per curiam).

panel of this court reversed, holding that the affidavit created a question of fact as to the legitimacy of the regulations.  Weiler v. Purkett, Nos. 94-1665/93-2041, 1995 WL 21660 (8th Cir. 1995) (per curiam) (Weiler I).

On remand, defendants supplemented the record with evidence that they were not aware of irregularities in the application of the mail procedure. They again moved for summary judgment based on qualified immunity, arguing that isolated misapplication of regulations by other corrections employees does not render the rules themselves invalid.  The district court denied the motion.  Defendants appeal.

## II.  DISCUSSION

Qualified immunity shields government actors from suit when,  "a reasonable  officer could have believed [the challenged act] to be lawful, in light of clearly established law and the information the [defendant]s possessed."  Anderson v. Creighton, 483 U.S. 635, 641  (1987).  The Supreme Court  recently  reiterated  the  importance  of  qualified  immunity  in "protecting government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service."  Richardson v. McKnight, 117 S. Ct. 2100, 2105 (1997) (quotations omitted).

In determining an official's entitlement to immunity, the courts undertake  a  two-pronged  analysis.   First,  the  court  must  see  if  a deprivation of constitutional magnitude has been alleged.  If so, the court must determine if that right was so clearly established that a reasonable public  official  would  have  known  his  or  her  conduct  violated  the Constitution at the time of the act.  We consider each question in turn.

## A.    Allegation of a Constitutional Right

"A necessary concomitant to the determination of whether the constitutional right asserted . . . is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991).  The first step in this process is critical because resolution "of this purely legal question permits courts expeditiously to weed out suits which fail the test." Id.  In this case, despite six years of litigation, including numerous submissions to the district court and three different arguments to this court, it is still not exactly clear what constitutional right Weiler seeks to vindicate.  He has, at various times, claimed interference with his right to receive mail, obstruction of his right of access to the courts, violation of substantive due process, and denial of equal protection of the laws.  Weiler has also maintained at times that the regulations themselves are invalid and at other times that the facially valid regulations were only unconstitutional as applied to him.  None of these assorted allegations, however, withstands careful scrutiny.

### 1.    Right to Receive Mail

The district court held that Weiler had alleged a violation of his First Amendment right to receive mail.  Although it is well settled that inmates have a right to receive mail, that right may be limited by prison regulations that are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 92 & 89 (1987).

It is clear that a regulation limiting the receipt of packages is not facially invalid.  In Bell v. Wolfish, 441 U.S. 520, 555 (1979), the Supreme Court approved a total ban on the receipt of packages containing food or personal property except for one package of food at Christmas, saying, it is "all too obvious that such packages are handy devices for the smuggling of contraband."

-4-

The next question is whether the regulation violated the Constitution as applied to Weiler. As earlier noted, Weiler filed an affidavit of ten Farmington inmates claiming that on unspecified dates under unstated circumstances from unidentified mailroom personnel each of them had received legal papers and transcripts from "family or friends." Applying Griffin v. Lombardi, 946 F.2d 604 (8th Cir. 1991), the district court, relying on our opinion in Weiler I, held that this affidavit was sufficient to subject a package regulation that otherwise passes constitutional muster under Supreme Court edict to "factual" uncertainty as to its reasonableness. This rationale simply misapplies Griffin and the law of this circuit.

Whether the ten inmates did or did not receive legal papers mailed by relatives and friends does not control whether the regulation was invalid as applied to Weiler. The ultimate legal question is whether this rule is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

We find it beyond dispute that packages may easily conceal contraband, and that the control of contraband is a legitimate penological interest. Thus, even if 100 inmates had received legal papers through a breakdown in mailroom procedures, and were willing to so state by affidavit, the reasonableness of legal mail or package regulations, designed to control receipt of contraband to inmates, would be no less constitutional. There is no evidence that the ten inmates who received packages in contravention of prison rules also did not receive contraband concealed in those packages. Given the great deference we owe to prison authorities in their administration of state prison systems, id. at 85, we cannot say that this regulation is an exaggerated response to the prison's security concerns. Therefore, the defendants did not violate the Constitution when they applied the rule to Weiler. Weiler has not alleged a violation of his constitutional right to receive mail.

## 2. Right of Access to the Courts

A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts. See, e.g., Jensen v. Klecker, 648 F.2d 1179, 1182-83 (8th Cir. 1981). Weiler, however, has not established any interference with legal mail. The regulation defines legal mail as correspondence from an attorney, judge or elected official. This type of formulation has been expressly approved by the Supreme Court. Wolff v. McDonnell, 418 U.S. 539, 576 (1974) ( "We think it entirely appropriate that the State require [legal mail] to be specially marked as originating from an attorney. . . ). The Farmington rule, even more generous to inmates than the Wolff requirements, passes constitutional muster as a matter of law. Since the package came from a family member, not a person or entity specified in the rule, it was not legal mail.[3] Weiler has not alleged a violation of his constitutional right of access to the courts.

## 3. Substantive Due Process

Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. United States v. Salerno, 481 U.S. 739, 746 (1987). There are two different ways of stating a substantive due process claim. First, the state violates substantive due process when it infringes "fundamental" liberty interests, without narrowly tailoring that interference to serve a compelling state interest. Reno v. Flores, 507 U.S. 292, 301-02 (1993). Second, the state violates substantive due process when it engages in conduct that is so outrageous that it shocks the conscience or otherwise offends "judicial notions of fairness, [or is] offensive to human dignity." Weimer v. Amen, 870 F.2d 1400, 1405

---

[3]Weiler also failed to demonstrate any prejudice caused by the alleged interference with his attempts to petition the judiciary, a necessary element to such a claim. Berdella v. Delo, 972 F.2d 204, 210 (8th Cir. 1992).

(8th Cir. 1989) (quotations omitted).  We have been wary of extending substantive due process into new arenas.  Brown v. Nix, 33 F.3d 951, 953 (8th Cir. 1994).

Weiler has failed to allege either type of substantive due process claim.  First, whatever the precise definition of a fundamental right may be, we are confident that Weiler has not been denied one here.  A prisoner's entitlement to delivery of packages from family members is not a right "rooted in the traditions and conscience of our people."  Salerno, 481 U.S. at 751 (quotations omitted).  Furthermore, Weiler has failed to point to any outrageous conduct by defendants that shocks the conscious.  His burden is to establish that the government action complained of is "truly irrational," that is, "'something more than . . . arbitrary, capricious, or in violation of state law.'"  Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992) (quoting Lemke v. Cass County, Nebraska, 846 F.2d 469, 472 (8th Cir. 1987) (en banc) (Arnold, J. concurring)).  The most that can be said of Weiler's allegations here is that the defendants did not ensure that the package rule was enforced without exception.  Weiler has not alleged a violation of his constitutional right to substantive due process.

### 4.    Equal Protection

The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest.  Timm v. Gunter, 917 F.2d 1093, 1103 (8th Cir. 1990).  The Supreme Court has explained that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."  Romer v. Evans, 116 S. Ct. 1620, 1627 (1996).

Weiler has not identified any classification system by which the defendants determined who would receive nonconforming packages and who would not.  A few

individual examples of unequal treatment are "insufficient to provide more than minimal support to an inference of classwide purposeful discrimination." Inmates of Neb. Penal and Correctional Complex v. Greenholtz, 567 F.2d 1368, 1381 (8th Cir. 1977). Weiler has presented no evidence that any difference in treatment was motivated by his membership in a protected class nor that it burdened a fundamental right. Weiler has not alleged a violation of his constitutional right to equal protection.

**B.    Contours of the Right as "Clearly Established"**

Normally, a determination that the plaintiff has failed to allege a violation of a constitutional right ends the qualified immunity inquiry. See, e.g., Thomas v. Hungerford, 23 F.3d 1450, 1452-54 (8th Cir. 1994) (defendants entitled to qualified immunity because no constitutional violation alleged). Even if this were not so, Weiler could not prevail under the second prong of qualified immunity.

The Supreme Court has directed courts to examine pre-existing law to see if it would be apparent to reasonable officials that their actions were unconstitutional. See Anderson, 483 U.S. at 640; Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Here, given the Supreme Court's holdings in Turner, 482 U.S. at 89, Bell, 441 U.S. at 555, and Wolff, 418 U.S. at 576-77, no reasonable official could have believed that refusing to deliver Weiler's package to him violated clearly established constitutional principles governing prisoner mail. Thus, even if Weiler had alleged a transgression of constitutional magnitude, the defendants would still be entitled to qualified immunity.

## III. CONCLUSION

The defendants are entitled to qualified immunity. The district court is reversed, and this case remanded for entry of judgment in favor of the defendants.

JOHN R. GIBSON, Circuit Judge, with whom Heaney and McMillian, Circuit Judges, join, dissenting.

I respectfully dissent. The court today simply ignores the record before the district court and principles restraining our review of motions on summary judgment.

This case presents a factual dispute relevant to whether the rule in question is <u>rationally related</u> to a governmental interest that is legitimate and <u>neutral</u>. <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89-90 (1987). Both the rationality of the rule and its neutrality are put into question by the evidence Weiler has presented.

Although the "rational relation" standard is appropriately deferential to the judgment of prison administrators, it does not make the prison officials' explanations for their actions the last and only word to be considered on the subject. A prisoner can still prevail by showing that a prison policy is "an exaggerated response to [stated] security objectives," <u>id.</u> at 97-98, as did the prisoners challenging the marriage regulations in <u>Safley</u>. One way of showing such an exaggerated response is by showing that the prison officials have not thought it necessary to impose the restriction on other similarly situated prisoners. For instance, in <u>Safley</u>, the stated reason for withholding approval of women inmates' marriages was to promote rehabilitation by avoiding "dependency." The rationality of that justification was rendered suspect by evidence that the marriages of male inmates were routinely approved. The Supreme Court stated, "That kind of lopsided rehabilitation concern cannot provide a justification for the broad Missouri marriage rule." <u>Id.</u> at 99. Similarly, in <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 417 n. 15 (1989), the Court stated that claims of inconsistency in application of a rule went "to the adequacy of the regulations as applied, and [should be] considered on remand." In the same vein, we held that uneven application of rules raised factual issues as to whether those rules were rationally related to announced security concerns in <u>Griffin v. Lombardi</u>, 946 F.2d 604, 608 (8th Cir. 1991), and <u>Thongvanh v. Thalacker</u>, 17 F.3d 256, 259 (8th Cir. 1994). If the factual record in a

case shows that the prison officials thought so little of the need for the rule that they neglected to enforce it, their actions are relevant to the issue of whether there was enough need to justify the rule's entrenchment on the prisoner's (admittedly abridged) First Amendment rights.

The record in this case contains both evidence of such neglect and evidence that the rule was enforced. Weiler presented the affidavits of ten inmates who said they had received legal papers from family or friends, despite the existence of the rule under which Weiler's papers were confiscated. The prison mail room supervisor, Leah Embly, and the prison superintendent, James Purkett, submitted affidavits that, to their knowledge, "there has never been an exception made to those policies either officially or unofficially." Weiler's side of the story, with permissible inferences, would indicate that enforcement of the rule was arbitrary rather than rational. <u>See</u> <u>Thongvanh</u>, 13 F.3d at 259. We cannot choose between contradictory accounts on motion for summary judgment.

The evidence of irregularity in enforcement is also relevant to the neutrality of the rule as applied. If the rule is not enforced as written but is occasionally invoked, one can infer that it is enforced according to some other less neutral principle than that stated.

The factual dispute about how this rule was applied should not be resolved on motion for summary judgment. Accordingly, I respectfully dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.