_____

No. 95-4056
_____

JOEL WHISMAN, a minor, through   *
his next friend Michelle        *
Whisman; MICHELLE WHISMAN;     *
MICHAEL WHISMAN; LYNN WHISMAN,   *
                                 *

     Plaintiffs-Appellees,     *

                               *

     v.                     *

CHUCK RINEHART, in his       *
individual capacity as Chief     *
Deputy Juvenile Officer of the   *
Thirty-ninth Judicial Circuit    *
of the State of Missouri; MARLA   *
PURSLEY, in her individual      *
capacity as social worker for    *
the Lawrence County Office of    *  Appeal from the United States
the Missouri Division of Family  *  District Court for the Western
Services; RUTH COX, in her      *  District of Missouri.
individual capacity and        *
officially as social worker     *
supervisor of the Lawrence      *
County Office of the Missouri    *
Division of Family services;     *
ALFRED BLAIR, in his         *
individual capacity and        *
officially as County Director    *
of the Lawrence County Office    *
of the Missouri Division of     *
Family Services; BILL JINES, in  *
his individual capacity and    *
officially as Chief Juvenile    *
Officer of the Thirty-ninth     *
Judicial Circuit of the       *
State of Missouri,          *
                               *

     Defendants-Appellants.    *

_____

Submitted: June 12, 1996

Filed: July 23, 1997
_____

Before ARNOLD, Chief Judge, F. GIBSON, Circuit Judge, and KORNMANN,[*] District Judge.

_____

KORNMANN, District Judge.

Rinehart, Pursley, Cox, Blair, and Jines appeal the district court's[1] denial of their motion to dismiss this 42 U.S.C. § 1983 action. Whismans filed this action against defendants, juvenile officers and social workers, claiming that defendants violated plaintiffs' constitutional rights of familial association, denying plaintiffs due process of law. Defendants filed a motion to dismiss, contending that plaintiffs' claims were in essence based upon claims of violation of state laws and, therefore, are not actionable under 42 U.S.C. § 1983, and that defendants Rinehart and Jines are entitled to absolute immunity. Defendants further contend that the claims against Jines, Cox and Blair are based upon respondeat superior, an insufficient basis for liability for suit under 42 U.S. C. § 1983, that the grandparents, Michael and Lynn Whisman, are not real parties in interest and should be dismissed, that plaintiffs have failed to show deprivation of a constitutional right in violation of due process, and that defendants are entitled to absolute and qualified immunity. The District Court denied the motion to dismiss. We affirm.

## I. BACKGROUND

We set forth the facts, construing the complaint liberally. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995). Joel Whisman ("Joel") is the sixteen month old son of Michelle

_____

[*]The HONORABLE CHARLES B. KORNMANN, District Judge, United States District Court for the District of South Dakota, sitting by designation.

[1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

-2-

Whisman ("Michelle").  Michelle left Joel with a babysitter on the evening of February 16, 1995, near her home in Aurora, Missouri.  On the morning of February 17, 1995, the babysitter contacted the Lawrence County, Missouri, Division of Family Services and spoke with Marla Pursley ("Pursley"), a social worker.  The babysitter reported to Pursley that Michelle had not picked up Joel as agreed and that Michelle's boyfriend had told the babysitter that Michelle was at home "passed out drunk."  Chuck Rinehart ("Rinehart"), Chief Deputy Juvenile Officer, contacted the police.  An officer went to Michelle's home at approximately 10:00 a.m. but failed to make contact with Michelle.  Michelle contends she did not fail, at the agreed time, to pick up Joel and was not "passed out drunk".

Pursley went to the babysitter's home, examined Joel, and found him to be in good health.  At that time, the babysitter told Pursley she had contacted Lynn Whisman ("Lynn"), Michelle's mother and Joel's grandmother, and that Lynn had agreed to pick up Joel from the babysitter around noon.  Pursley, after consulting with Rinehart, directed the babysitter to immediately deliver Joel into Rinehart's custody.  The babysitter did so at approximately 11:45 a.m., driving Joel to Monett, Missouri, fourteen miles away.

Rinehart examined Joel and drove him to Mt. Vernon, Missouri, leaving him at the Tri-County Shelter Home.  Rinehart then returned to his office in Moneta.

Before Rinehart returned, Lynn arrived at Rinehart's office in Moneta and met with Bill Jines ("Jines"), the Chief Juvenile Officer and Rinehart's supervisor.  Lynn requested that Joel be delivered to her. After Rinehart returned, Lynn requested both Rinehart and Jines to deliver Joel to her.  They refused to do so or to advise Lynn of Joel's whereabouts.  Rinehart advised Lynn to obtain a lawyer and file an application for custody.

Rinehart and Pursley were notified on the afternoon of February 17, 1995, that Michelle was willing to sign over custody of Joel to Lynn. Michelle and Lynn made repeated requests for

Joel's return and the termination of his detention between February 17 and March 1, 1995.  On March 1, 1995, Michelle received in the mail copies of a petition and Order of Temporary Legal Custody, with a letter notifying her a hearing was planned for March 15, 1995.  The letter was dated February 27, 1995, postmarked on February 28, 1995.

The order granting temporary custody to the Division of Family Services was ostensibly signed on February 17, 1995.  Plaintiffs contend the order was backdated and that this was a common practice used by defendants.  The petition and order were not filed until March 1, 1995, the day Michelle received a copy of the petition and order in the mail.  On March 2, 1995, Whismans filed a request for an immediate hearing.  Over the objection of defendants, the hearing was held on March 6, 1995.  Joel's physical custody was restored to his family on March 6, 1995, seventeen days after he was taken into custody by defendants.

## II. DISCUSSION

Defendants appeal the denial of the motion to dismiss, claiming absolute and qualified immunity. Only these issues in the present case are appealable as a matter of right prior to a final judgment.  Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996).  We review *de novo* a district court's denial of a motion to dismiss on the ground of immunity.  Hafley v. Lohman, 90 F.3d at 264; Brown v. Griesenauer, 970 F.2d 431, 434 (8th Cir. 1992).

When considering a motion to dismiss, we must construe the complaint liberally and assume all factual allegations to be true.  Goss v. City of Little Rock, 90 F.3d 306, 308 (8th Cir. 1996).  We may order dismissal only if it appears beyond a reasonable doubt that the plaintiffs can prove no set of facts which would entitle them to relief.  Goss, 90 F.3d at 308; Frey v. City of Herculaneum, 44 F.3d at 671.  "A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which a

plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" Frey v. City of Herculaneum, 44 F. 3d at 671 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984)).

## A. Absolute Immunity

Defendants allege they are entitled to absolute quasi-judicial or quasi-prosecutorial immunity. The United States Supreme Court has emphasized that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939, 114 L. Ed. 2d 547 (1991). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties" and, therefore, the Supreme Court has been "quite sparing" in its recognition of absolute immunity. Burns v. Reed, 500 U.S. at 486-87, 111 S. Ct. at 1939.

The United States Supreme Court, in Imbler v. Pachtman, 424 U.S. 409, 431, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976), established the absolute immunity of a prosecutor from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the State's case." To the extent that defendants are sued for initiating state judicial proceedings seeking temporary protective custody of Joel, their "role was functionally comparable to that of prosecutor." Thomason v. SCAN Volunteer Services, Inc., 85 F.3d 1365, 1373 (8th Cir. 1996). The gravamen, however, of Whismans' complaint is not based upon the institution of state court proceedings, but upon defendants' failure to investigate, their detaining Joel, and the claimed inordinate delay in filing state court proceedings. Under a liberal reading of the Whismans' complaint, defendants' actions did not aid in the presentation of a case to the juvenile court; they were intentionally designed to

avoid or unreasonably delay judicial process.  These actions are not prosecutorial in nature and do not form the basis for absolute quasi-prosecutorial immunity.

"Judges performing judicial functions enjoy absolute immunity from § 1983 liability." Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994). Judicial immunity is extended to officials other than judges when "their duties are functionally comparable to those of judges -- that is, because they, too, exercise a discretionary judgment as part of their function." Robinson v. Freeze, 15 F.3d at 108 (quoting Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436, 113 S. Ct. 2167, 2171, 124 L. Ed. 2d 391 (1993)). Defendants' claimed actions in the present case do not fall within this category.

## B. Qualified Immunity

Government officials performing discretionary functions are entitled to qualified immunity unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, (1982).  We have held that "qualified immunity is an affirmative defense, "which will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Hafley v. Lohman, 90 F.3d at 266 (quoting Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995)).

The qualified immunity analysis is a two-step process. Weaver v. Clark, 45 F.3d at 1255.  The threshold question is whether the plaintiff has alleged the violation of a constitutional right. Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995) (quoting Cole v. Bone, 993 F.2d 1328, 1332 (8th Cir. 1993)).  If plaintiffs meet this standard, we next determine "whether that right was 'clearly established' at the time of the alleged violation." Weaver v. Clark, 45 F.3d at 1255. "A right is 'clearly established' when the

-6-

contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Birkenholz v. Sluyter, 857 F.2d 1214, 1216 (8th Cir. 1988). "In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir. 1989).

Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation. *See* Murphy v. Morris, 849 F.2d 1101, 1103 (8th Cir. 1988). This is an objective standard. The standard is to be applied to a particular defendant's conduct as a question of law and is to be decided by the court prior to trial. Swenson v. Trickey, 995 F.2d 132, 133 (8th Cir. 1993). We review the inquiry on a motion to dismiss by accepting all well pleaded facts in the complaint as true.

### 1. MICHELLE AND JOEL WHISMAN'S CLAIMS

Michelle has alleged that defendants' actions violated her constitutional right to not be deprived of the custody of her son without due process of law. Parents have a recognized liberty interest in the care, custody, and management of their children. Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987). Both parents and children have a liberty interest in the care and companionship of each other. See Lehr v. Robertson, 463 U.S. 248, 258, 103 S. Ct. 2985, 2991, 77 L. Ed. 2d 614 (1983). ("[T]he relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection."). Myers v. Morris, 810 F.2d at 1462. That liberty interest "is limited by the compelling governmental interest in protection of minor children, particularly

-7-

in circumstances where the protection is considered necessary as against the parents themselves." Id.

We take a broad view of what constitutes "clearly established" under the qualified immunity analysis. Munz v. Michael, 28 F.3d 795, 799 (8th Cir. 1994). The balance favors the plaintiffs when the test is based solely on the allegations in the complaint. Hafley v. Lohman, 90 F.3d at 267 (balancing an employee's First Amendment rights against a public employer's interests). We have held that "when a state official pursuing a child abuse investigation takes an action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity, if such action is properly founded upon a reasonable suspicion of child abuse." Thomason v. SCAN Volunteer Services, 85 F.3d at 1371.

This does not appear to be a case of balancing the parent's liberty interest against the state's interest in protecting the child. Before Joel was removed to defendants' custody, defendants were advised that Lynn, Joel's grandmother, had agreed to pick up Joel by noon. The babysitter had contacted Lynn and thus, arguably, was entirely comfortable with Lynn's prompt response and plan to pick up Joel. Defendants blocked this reasonable arrangement, which arrangement might have been authorized or directed by Michelle. Defendants apparently had no information to the contrary. Defendants knew there was no indication of any physical neglect of Joel, no indication of any immediate threat to his welfare and no indication of any criminal activity by Michelle or anyone else. All they apparently had was third hand hearsay as to Michelle being intoxicated while the child was being cared for by a babysitter. There was not, under the allegations of the complaint, any reasonable suspicion of child abuse such as was present in Thomason v. SCAN Volunteer Services, Inc., supra. As we have already observed, rights of parents and children, in such a relationship, are not absolute. "The intangible fibers that

connect parent and child have infinite variety. . . . It is self-evident that they are sufficiently vital to merit constitutional protection *in appropriate cases*." Lehr v. Robertson, 463 U.S. at 256, 103 S. Ct. at 2290 (emphasis added). We are unwilling to conclude that the case before us is not such an appropriate case. The allegations here as to Michelle and Joel are totally unlike the allegations and the factual scenario in Ebmeier v. Stump, supra, where we agreed with the district court that the actions of the defendants were objectively reasonable and where there was no violation of a constitutionally protected liberty interest. As in Thomason, our holding is limited to the claimed facts of this case. Despite repeated attempts to retrieve Joel from defendants' custody, defendants refused to return Joel. No investigation was done to determine whether it was necessary or even advisable to take Joel into custody in the first place and no investigation was ever done as to the possibility of returning Joel to his mother, grandmother or anyone else designated by Michelle. We accept as true, for the purposes of a motion to dismiss, that the state had no compelling governmental interest in taking custody of Joel and there was no reasonable suspicion of child abuse or neglect.

Defendants contend they were acting under a state court order. Yet no state court order was filed until 13 days after defendants had taken Joel into custody. Orders of this type are not effective until filed. See Nance v Nance, 880 S.W.2d 341, 345 (Mo. App. 1994). Defendants attempted to delay the hearing and Joel's return to his mother, in clear contravention of Michelle's and Joel's rights. Michelle, on her own or acting through her mother, had a clearly established right to custody of Joel, of which right defendants reasonably should have known. Joel had a corresponding clearly established right to familial association with his mother. Defendants have not overcome the threshold inquiry with respect to

Michelle's and Joel's claims.  To the contrary, the threshold question is answered in favor of Michelle and Joel.

Even if defendants had a right to take temporary custody of Joel, defendants had a corresponding obligation to afford Michelle and Joel an adequate post-deprivation hearing.  Doe v. Hennepin County, 858 F.2d 1325, 1329 (8th Cir. 1988).  The right to an adequate post-deprivation hearing was clearly established in February of 1995.  Defendants scheduled the hearing for March 15, 1995, nearly a month after taking Joel into custody.  Further, defendants objected to an earlier hearing, claiming administrative inconvenience.  Michelle's and Joel's first opportunity for a due process hearing was seventeen days after Joel was taken into custody.  Under the facts of this case, seventeen days was not a prompt hearing.

Defendants contend that plaintiffs could have obtained a lawyer and availed themselves of certain procedural remedies at an earlier time, thus satisfying their right to due process.  We cannot accept this contention.  There may be some analogy in observing that any person whose clear constitutional rights are violated has the right to later employ counsel.  When the state deprives parents and children of their right to familial integrity, even in an emergency situation, without a prior due process hearing, the state has the burden to initiate prompt judicial proceedings to provide a post deprivation hearing.  Weller v. Dep't. of Soc. Serv. for Baltimore, 901 F.2d 387, 396 (4th Cir.  1990).  The Second Circuit held, in Duchesne v. Sugarman, 566 F.2d 817, 828 (2nd Cir. 1977):

> In this situation, the state cannot constitutionally "sit back and wait" for the parent to institute judicial proceedings.  It "cannot . . . [adopt] for itself an attitude of 'if you don't like it, sue.'"  The burden of initiating judicial review must be shouldered by the government.  We deal here with an uneven situation in which the government has a far greater familiarity with the legal procedures available for testing its action.

In such a case, the state cannot be allowed to take action depriving individuals of a most basic and essential liberty interest which those uneducated and uninformed in legal intricacies may allow to go unchallenged for a long period of time.

We find Duchesne particularly persuasive where defendants are alleged, in the present case, to have provided plaintiffs with false information as to how they should proceed. The fact that other remedies may have been available to plaintiffs to secure their constitutional rights to a post-deprivation hearing does not relieve defendants of their obligation to provide such a hearing. Of even more concern is the failure to provide Joel his right to a prompt post-deprivation hearing; he was clearly not in a position to secure that right for himself.

Defendants contend the supervisory officials, Jines, Cox and Blair, are immune from liability. Clearly, claims based upon respondeat superior are not cognizable under 42 U.S.C. § 1983. Frey v. City of Herculaneum, 44 F.3d at 672. The claims against the supervisory officials, however, are based upon failure to properly train and supervise as well as creating, encouraging and following the unconstitutional custom and practice of detaining children for thirty days without a due process hearing. Both these claims are cognizable under 42 U.S.C. § 1983. Tilson v. Forest City Police Department, 28 F.3d 802, 806 (8th Cir. 1994); Weiler v. Purkett, 104 F.3d 149, 151 (8th Cir. 1997).

### 2. MICHAEL AND LYNN WHISMAN'S CLAIMS

Defendants contend Lynn and Michael Whisman, Joel's grandparents, have failed to allege the violation of a constitutional right. The grandparents alleged in the complaint that they had the right to intervene in any juvenile court proceeding concerning Joel, which right defendants deprived them of without due process of law. Mo. Rev. Stat. § 211.177.1 provides:

A grandparent shall have a right to intervene in any proceeding initiated pursuant to the provisions of this

-11-

> chapter, in which the custody of a grandchild is in issue, unless the juvenile judge decides after considering a motion to intervene by the grandparent that such intervention is against the best interest of the child.

Further, Rule 111.02(b) of the Missouri Juvenile Court Rules provides:

> When a juvenile is taken into judicial custody, the juvenile shall not remain in custody but shall be released at once to the juvenile's custodian or some other suitable person, unless;
> (1) the court has ordered the juvenile to be in detention; or
> (2) temporary detention has been ordered pursuant to Rule 111.06; or
> (3) the juvenile was taken into protective custody and the court determines the conditions requiring protective custody continue to exist.

The complaint alleges that at the time Lynn initially requested that Joel be returned to her, a request immediately joined in by Michelle, and during the next twelve days, there was no court order for detention. In fact, the complaint alleges that Lynn was told on February 17, 1995, that a court order had to be signed for the process to begin and that it would take 30 days to obtain a court order. The grandparents allege that these actions prevented them from exercising their statutory rights as grandparents to intervene in the juvenile proceeding and such actions constitute a denial of their rights without due process.

The Missouri Court of Appeals held in Ruth v. State of Missouri, 830 S.W.2d 528, 530 (Mo. App. 1992), that no statute confers upon a grandparent an unconditional right to intervene in juvenile court proceedings concerning the custody of a child. In 1993, the Missouri Legislature enacted Mo. Rev. Stat. § 211.177.1 which mandates the right to intervention unless the juvenile judge decides, after considering the motion of the grandparents, that the requested intervention is contrary to the best interest of the child.

Alleged violations of state laws, state-agency regulations, and even state court orders do not by themselves state a claim under 42 U.S.C.§ 1983. Only federal rights are guarded and vindicated by such statute. Ebmeier v. Stump, 70 F.3d at 1013. Constitutional significance may attach only to certain interests created by state law and it is clear that not every transgression of state law may do double duty as a constitutional violation. Id. We must be extremely careful in examining claimed violations of state laws, regulations and court orders. Only in very limited and obvious circumstances will federal constitutional significance attach in these matters. "There is a body of law, to be sure, holding that state law may create a 'liberty interest' protected by the Fourteenth Amendment. If, for example, a state statute gives 'specific directives to the decision maker that if the (statute's) substantive predicates are present, a particular outcome must follow,' a 'liberty interest' protected by the Fourteenth Amendment is created." Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993) (quoting Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 463, 109 S. Ct. 1904, 1910, 104 L. Ed. 2d 506 (1989)).

Michael and Lynn advance the argument that they have a liberty interest in the custody of their grandchildren. "[W]e reach the more fundamental question whether . . . a natural grandparent's interest in the society of her grandchildren, though an interest rooted in powerful emotions, is a liberty interest under the due process clause. If the grandchildren are in their parents' custody, the answer is probably no . . . . A more difficult question is presented where, as here, the grandchildren are not in the parents' custody." Ellis v. Hamilton, 669 F.2d 510, 513 (7th Cir. 1982). The Whismans allege the impacts of the defendants' conduct on each individual and on the family as a whole. These are significant allegations under the plurality opinion in Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), a case in which a zoning ordinance which prevented a

grandmother from living with her grandson was struck down. The Court was there concerned with the interests of the child as well as the grandparent. It is also significant that, in the present case, there was no contest between the mother and the grandparents. They were united in interest in attempting to restore the family unit.

We are also "under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory," even if it is a theory not advanced by the grandparents. Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1426 (8th Cir. 1986). We held over nine years before Joel was taken into custody that "access to the courts is a fundamental right of every citizen." Harrison, 780 F.2d at 1427. The Missouri Legislature, in 1993, provided grandparents guaranteed access to the courts by allowing grandparents to file a motion to intervene in juvenile court proceedings. Mo. Rev. Stat. § 211.177.1. Thus, Michael and Lynn Whisman had a clearly established right in 1995 to petition the Missouri juvenile court for custody of Joel. Grandparents who wish to seek to intervene should receive "whatever process is due in connection with the determination of whether" intervention is in the child's best interests. Kentucky Dep't. of Corrections v. Thompson, 490 U.S. 454, 463 (1989).

Government action designed to prevent an individual from utilizing legal remedies may infringe upon the First Amendment right to petition the courts. In re Worker's Compensation Refund, 46 F.3d 813, 822 (8th Cir. 1995). The complaint alleges that defendants intentionally failed to initiate juvenile court proceedings until March 1, 1995. Defendants were aware that the grandparents desired to obtain custody of Joel and that Michelle had authorized it. Instead of promptly initiating proceedings wherein the grandparents could petition to intervene, defendants told Lynn that they could do nothing until such proceedings were initiated and that it would take thirty days to initiate

-14-

proceedings.  Defendants' alleged actions in preventing the grandparents from petitioning the court for custody of Joel state a cause of action for violation of their First Amendment rights to access to the courts. The Missouri statute did not authorize grandparents to initiate any custody proceeding.  It authorized intervention and defendants blocked such right by refusing to act to initiate the proceeding. Plaintiffs have alleged the violation of a clearly established constitutional right of which a reasonable person would have known.  Defendants' motion to dismiss on the grounds of qualified immunity was therefore properly denied.

## Conclusion

For the foregoing reasons, the order of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT