# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-1114

_____

| | | |
|---|---|---|
| Eugene Booker, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| vs. | * | Appeal from the United |
| | * | States District Court |
| City of St. Louis, a Municipal | * | for the Eastern District |
| Corporation; Nina Murphy, | * | of Missouri. |
| Chairperson of the Civil Service | * | |
| Commission of the City of St. Louis, | * | |
| in her individual and official capacities; | * | |
| John H. Clark, Vice-Chairperson of the | * | |
| Civil Service Commission of the City | * | |
| of St. Louis, in his individual and | * | |
| official capacities; Kay V. Leonard, | * | |
| Member of the Civil Service | * | |
| Commission of the City of St. Louis, | * | |
| in her individual and official | * | |
| capacities, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: September 13, 2002
Filed: November 1, 2002

_____

Before McMILLIAN, and MORRIS S. ARNOLD, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Eugene Booker appeals from a final judgment entered in the district court[2] in favor of the City of St. Louis and members of its Civil Service Commission. We affirm as modified.

**BACKGROUND**

Booker was a correctional officer at the City's Medium Security Institution (MSI). A municipal regulation provided that a public safety employee, such as Booker, was subject to random drug testing and, if he or she tested positive, to dismissal. The City contracted with BJC Health Services (BJC) to assist in the drug testing program, including the random selection process. By written notice, Booker was advised that he had been randomly selected to be drug tested on July 15, 2000. On that date, Maria Curia, an employee of BJC's sub-contractor, accompanied Booker into a restroom, which was located in a locker room of the correctional facility. Booker provided the specimen in a bathroom stall, while Curia stood to his back at least a foot away. During this time, people came in and out of the locker room. On July 20, 2000, Dr. A. Patel, a medical review officer with BJC, notified the City that Booker had tested positive for marijuana. The City then advised Booker he was subject to dismissal because of the positive drug test. After a pre-termination hearing, the City dismissed

_____

[1] The Honorable Andrew W. Bogue, United States Senior District Judge for the District of South Dakota, sitting by designation.

[2] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Booker. He appealed the dismissal to the Civil Service Commission, which upheld the dismissal.

Booker then filed an action under 42 U.S.C. § 1983 against the City and members of the Civil Service Commission (collectively the City). Booker alleged a Fourth Amendment violation because he had been "selected and forced to submit to drug testing, without good cause " and had not authorized Curia to collect the sample or Dr. Patel to report the results to the City. Booker also alleged substantive and procedural due process claims.

The City moved to dismiss the due process claims, asserting that Booker had failed to state a substantive due process claim, see Fed. R. Civ.P. 12(b)(6), and had failed to exhaust his state remedies as to the procedural due process claim, see Fed. R. Civ. P. 12(b)(1). The City also moved for summary judgment on the Fourth Amendment claim, asserting that the undisputed facts showed that the random drug testing was a reasonable search given the City's interest in institutional security and Booker's diminished expectation of privacy, citing Ford v. Dowd, 931 F.2d 1286, 1289 (8th Cir. 1991) (Ford) and McDonell v. Hunter, 809 F.2d 1302, 1307 (8th Cir. 1987) (McDonell). See also Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989) (upholding drug testing urinalysis of Customs Service employees); Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602 (1989) (upholding drug testing urinalysis of railroad employees). The City also asserted that Booker's allegations concerning the manner of collection were without factual and legal merit. Among other things, the City attached to its motion a form Booker had signed authorizing the BJC sub-contractor to collect and test his urine sample for drugs.

Booker opposed the motion, asserting that the City had failed to demonstrate that his selection was random. In support, Booker submitted his affidavit, in which he stated he did not "believe" that his selection was random because no other MSI employee had been selected for testing on July 15, 2000, and many MSI employees had never been tested. Booker also asserted that Curia had violated his privacy rights

3

because she had observed him while he provided the sample. In support, Booker submitted a portion of Curia's testimony at the Civil Service Commission hearing. At the hearing, Curia testified that the bathroom where Booker provided the sample was part of a locker room at the correctional facility and that while he was providing the sample people were coming in and out of the locker room. She further testified that Booker had privacy in providing the specimen because he was in a stall and she was two to three feet away. In his affidavit, Booker claimed that Curia stood at his shoulder and "was close enough (approximately a foot away) so that she could observe [his] genitals," which embarrassed him. The City responded that Booker had not raised a claim regarding randomness in his complaint, but submitted the Civil Service Commission hearing testimony of the administrator of its drug and alcohol program. The administrator testified that BJC or its subcontractor randomly selected the employees based on a computer program used by a number of agencies for the same purpose. The City also noted that Booker had not alleged a privacy claim in his complaint and had not moved to amend his complaint.

In a combined memorandum opinion, the district court first addressed Booker's Fourth Amendment claim. Noting that an employment-related urinalysis was a search under the Fourth Amendment, to determine whether the search was reasonable, the district court balanced the City's needs against Booker's expectation of privacy. In so doing, the district court held that the search was reasonable, rejecting his randomness and privacy claims. Turning to the due process claims, the district court granted the City's motion to dismiss the substantive due process claim for failure to state a claim. The district court held that Booker did not have a property interest, and, in any event, had not pled facts to show that his termination was irrational or arbitrary. As to the procedural due process claim, the district court acknowledged that Booker had not exhausted state remedies, but went on to hold that he had failed to state a claim. The district court then dismissed both due process claims with prejudice and dismissed the state law claim without prejudice.

**DISCUSSION**

We review de novo the district court's grants of the City's motion for summary judgment and motion to dismiss. Turner v. Holbrook, 278 F.3d 754, 756 (8th Cir.2002). In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, "we construe the complaint liberally, taking all allegations as true, and will affirm only if it appears beyond a doubt that [the plaintiff] cannot prove any set of facts in support of the claim." Id. (internal quotation omitted). In reviewing the grant of summary judgment, we review the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party, and will affirm "only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a mater of law." Id.

On appeal, Booker concedes that drug testing of correctional officers may be based on random selection. McDonell, 809 F.2d at 1308. He, however, argues that the district court erred in granting summary judgment because there was a disputed issue of fact concerning whether his selection was random. The district court did not err. As the district court held, Booker's "belief" that he was singled out for testing is not evidence that he was. The City's evidence was that the selection was random. Booker's assertions that no other MSI employee had been selected for testing on July 15, 2000, or that many MSI employees have never been selected for testing do not raise a reasonable inference that he was not randomly selected.

Booker also concedes that the City has a compelling interest "in assuring that the activities of employees who come into daily contact with inmates are not [hindered] by drugs and are fully capable of performing their duties" and that, as a correctional officer in a medium security institution, he had a diminished expectation of privacy. Id. However, he asserts that he had some expectation of privacy in providing a urine sample, see Veronia Sch. Dist. v. Acton, 515 U.S. 646, 657 (1995) (Veronia Sch. Dist.), and argues that the search was unreasonable because Curia had observed him while he provided the urine sample. The City responds that this court should not address the privacy claim because Booker failed to raise it in his complaint. Although

Booker did not raise a privacy claim in his complaint, because the district court considered the claim as raised in Booker's opposition to summary judgment, we will address it.

On appeal, Booker argues that Curia violated the City's regulation concerning privacy in drug testing. Even if she did, a violation of a municipal regulation does not establish a constitutional violation for purposes of § 1983. See Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995). In addition, the City could not be held vicariously liable for a violation of its regulation. See Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir.1999).

In any event, even assuming, as Booker alleges, that Curia stood a foot behind him as he provided the sample in a bathroom stall located in the restroom of a locker room in the correctional facility, we do not believe the manner of collection was so intrusive as to constitute an unreasonable search. In Veronia Sch. Dist., 515 U.S. at 657, the Supreme Court upheld a school district's random drug testing of student athletes, balancing the school district's interest in deterring drug use against the students' privacy interests. As to the privacy interests, the Court noted that male students provided the sample at a urinal along a wall, were fully clothed, and were "only observed from behind, if at all." As in Veronia Sch. Dist., "the privacy interests compromised by the process of obtaining the urine sample . . . [were] negligible." Id. at 657; see also Wilcher v. City of Wilmington, 139 F.3d 366 (3d Cir. 1998) (search was reasonable where monitors stood behind firefighters as they gave urine samples).

Nor do we believe that the Constitution requires same-sex monitoring. In a similar circumstance, this court has held that surveillance of male inmates by female guards, including observation of them in the bathroom and shower, was not unreasonable, noting that the sex-neutral practice "neither impermissibly violate[d] the inmates' privacy nor the guards' equal opportunity rights." Timm v. Gunter, 917 F.2d 1093, 1102 (8th Cir. 1990), cert. denied, 501 U.S. 1209 (1991). In this case, we also note that Curia, as an employee of an independent company, would not encounter

Booker on a regular basis and, if she were able to see Booker's genitals as he provided the sample, any such observation would have been fleeting.  See Michenfelder v. Summer, 860 F.2d 328, 334 (9th Cir. 1988) (female guards' infrequent observation of nude male inmates did not violate the Constitution).  In addition, we note that Booker did not object or ask for a male monitor.

Booker's other arguments concerning his Fourth Amendment claim are without merit. We also need not discuss Booker's due process claims in detail.  As to the substantive due process claim, even if he had a property interest, see Moran v. Clarke, 296 F.2d 638, 644-45 (8th Cir. 2002) (en banc) (Moran), the actions surrounding his drug testing and termination were not irrational, much less "truly irrational," Graning v. Sherbourne County, 172 F.3d 611, 617 (8th Cir. 1999), or "conscience shocking," Moran, 296 F.3d at 647.  As to the procedural due process claim, the parties agree that Booker has not exhausted his state remedies.   As the district court recognized, "[e]xhaustion of state remedies is necessary before any federal procedural due process allegations state a claim under § 1983." Wax'n v. Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000).  Thus, "[c]onsistent with exhaustion principles, we modify the dismissal [of the procedural due process claim] to be without prejudice . . .." Calico Trailer Mfg. Co. v. Ins. Co. of N. Am., 155 F.3d 976, 978 (8th Cir. 1998).

Accordingly, we modify the dismissal of the procedural due process claim to be without prejudice and affirm the judgment of the district court as modified.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

7