NORTHERN VALLEY COMMUNICA-TIONS, LLC, Plaintiff, Counter-claim Defendant,

v.

QWEST COMMUNICATIONS CORPORATION, Defendant, Counterclaim Plaintiff,

Global Conference Partners, LLC, Counterclaim Defendant.

No. Civ. 09–1004.

United States District Court, D. South Dakota, Northern Division.

March 29, 2010.

§ 1404(a). *Terra Int'l, Inc. v. Miss. Chem.* *Corp.*, 119 F.3d 688, 697 (8th Cir.1997).

James M. Cremer, Bantz, Gosch & Cremer, LLC, Aberdeen, SD, Joseph P. Bowser, Michael B. Hazzard, Ross A. Buntrock, Arent Fox LLP, Washington, DC, for Plaintiffs.

Christopher Wayne, Madsen Thomas John Welk, Boyce Greenfield Pashby & Welk, Sioux Falls, SD, Charles W. Steese, Steese, Evans & Frankel, P.C., George Baker Thomson, Jr., Qwest Services Corporation, Denver, CO, for Defendants.

Anthony Lee Osborn, Jeana L. Goosmann, Jeremy J. Cross, Goosmann Law Firm, P.L.C., Sioux City, IA, Jennifer P. Bagg, Mark James O'Connor, Lampert, O'Connor & Johnston, P.C., Washington, DC, for Counterclaim Defendant and Counter–Claimant.

## OPINION AND ORDER

CHARLES B. KORNMANN, District Judge.

### INTRODUCTION

Northern Valley filed this diversity action to collect for amounts allegedly due from Qwest for providing originating and terminating telephone access services. The background of this case is set forth in *Northern Valley Communications, LLC v. Qwest Communications Corp.*, 659 F.Supp.2d 1062 (D.S.D.2009).

Briefly, Northern Valley is a competitive local exchange carrier ("CLEC") that offers local telephone service in South Dakota. Qwest, for the purposes of this action, is an interexchange carrier ("IXC") that provides long distance service to its customers. Northern Valley provides "terminating switched access service" to Qwest to enable Qwest to deliver its customers' long distance calls to Northern Valley's customers.

Global Conference is a California corporation that provides conference calling services to IXC's customers for low or no fees. The relationship between Global Conference and Northern Valley is disputed. Northern Valley alleges that Global Conference is an end user of Northern Valley's telephone lines, entitling Northern Valley to bill Qwest for terminating calls made to the telephone lines leased by Global Conference at the rate set forth in its tariff. Qwest alleges in its counterclaims that Global Conference is not an end user and Northern Valley is therefore not entitled to bill Qwest for terminating calls pursuant to Northern Valley's tariffs.

Northern Valley alleges Qwest has failed to pay switched access charges to complete calls from Global Conference's customers. Qwest filed counterclaims against Northern Valley and Global Conference alleging that, by virtue of their relationship, they have engaged in a "traffic pumping" scheme. The alleged scheme involves Northern Valley providing telephone numbers to Global Conference, Global Conference advertising free conference calls in an attempt to generate long distance calls through Qwest to Northern Valley's numbers, Northern Valley billing Qwest for call termination, and splitting the profits with Global Conference as "marketing fees."

Northern Valley moved (Doc. 58) to dismiss Counts IV, V, and VI of Qwest's counterclaims against Northern Valley for lack of standing[1] Qwest moved (Doc. 86) to dismiss Count III of Global Conference's counterclaims against Qwest for failure to state a claim.

### RELATED CASES

This is just one of many cases involving the same controversy that have been filed in the District of South Dakota and elsewhere. The IXCs refer to these cases as traffic pumping cases. The ILECs refer to them as conference calling cases.

---

1. Qwest filed an amended answer and counterclaim after the motion to dismiss was briefed. The amendment does not affect the counts plaintiff seeks to dismiss.

The first of these cases filed in the District of South Dakota were *Northern Valley Communications, LLC v. MCI Communications Services, Inc., d/b/a Verizon Business Services,* Civ. 07–1016 and *Sancom, Inc. v. MCI Communications Services, Inc., d/b/a Verizon Business Services,* Civ. 07–4106. Verizon filed counterclaims and third party claims against Global Conference Partners, LLC, d/b/a/ Quality Conferencecall.com, in one case and Freeconferencing Corp and Citrix Online LLC[2] in the other case. The counterclaim defendants in turn filed counterclaims against Verizon. Those cases were consolidated under Civ. 07–1016KES.

Sancom filed a similar action against Qwest, *Sancom, Inc. v. Qwest Communications Corp.,* Civ. 07–4147KES. Qwest filed counterclaims and third party claims against FreeConference in that action.

Plaintiffs and third party defendants in Civ. 07–1016 and Civ. 07–4147 filed motions to dismiss Verizon's counterclaims and third party claims on the basis of the filed rate doctrine. They also claimed that the counterclaims failed to state a claim. They further contended that the counterclaims were foreclosed by the FCC's decision in *Qwest Communications Corp v. Farmers & Merchants Mutual Telephone Company,* Mem Op. & Order, File No. EB–07–MD–001, FCC 07–175, 22 F.C.C.R. 17973 (Oct. 2, 2007) ("*Farmers I*"). Finally, Global moved to have the case transferred to the FCC pursuant to the primary jurisdiction doctrine. Judge Schreier denied the motions, *Northern Valley v. MCI,* 2008 WL 2627519 (D.S.D. June 26, 2008), and *Sancom v. Qwest,* 2008 WL 2627465 (D.S.D. June 26, 2008).

Verizon moved in Civ. 07–1016 to dismiss the third party defendant's counterclaims against Verizon for failure to state a claim and lack of standing. Judge Schreier denied the motion to dismiss for failure to state a claim but granted the motion to dismiss the requests for injunctive and declaratory relief for lack of standing. *Northern Valley v. MCI,* 2009 WL 763570 (D.S.D. March 19, 2009).

Northern Valley, Sancom, and Verizon filed stipulations for dismissal as to their claims and counterclaims.

The matter was still pending as to Verizon's claims against Global Conference and FreeConference and their counterclaims against Verizon. *MCI Communications Services, Inc., d/b/a Verizon Business Services v. Global Conference Partners, LLC, d/b/a Quality ConferenceCall.Com and Free Conference Corp,* Civ. 07–1016KES. However, the parties stipulated for the dismissal of those claims and counterclaims on March 22, 2010. *Sancom v. MCI,* Civ 07–4107, which had been consolidated with 07–1016, is still pending.

Qwest has filed a motion for partial summary judgment in Civ. 07–4147 on the basis, inter alia, of the filed rate doctrine. Sancom and Free Conferencing filed motions for summary judgment on the merits and an amended motion for summary judgment. Those motions are pending.

Sancom also filed an action against Sprint, *Sancom, Inc. v. Sprint Communications Company Limited Partnership,* Civ. 07–4107KES. Sprint filed counterclaims and third party claims against Free Conferencing Corporation of America and Telejunctions LLC. Sancom filed a motion to dismiss Sprint's counterclaims under the primary jurisdiction doctrine and, alternatively, moved to stay the counterclaims pending referral to the FCC. The third party defendants also moved to dismiss Sprint's third party claims. Prior to transfer of the case to Judge Schreier,

---

**2.** Citrix Online was dismissed pursuant to stipulation of the parties in November 2008.

Judge Piersol denied the motions pending the FCC's reconsideration of *Farmers I*. Sprint's motion for judgment on the pleadings as to breach of implied contract and unjust enrichment claims on the basis of the filed rate doctrine is pending.

Northern Valley filed a similar action against Sprint, *Northern Valley Communications, LLC v. Sprint Communications Company Limited Partnership*, Civ. 08–1003KES. Sprint filed counterclaims and third party claims against Global Conference Partners. Northern Valley and Global Conference moved to dismiss Sprint's claims under the filed rate doctrine, on the basis of failure to state a claim, and on the basis of the FCC's decision in *Farmers I*. Those motions were denied on July 30, 2008, Doc. 25. Northern Valley filed a motion for partial summary judgment, seeking payment for calls terminated to "traditional" customers, i.e. non-conference calling traffic. Sprint filed a motion for judgment on the pleadings as to breach of implied contract and unjust enrichment claims on the basis of the filed rate doctrine. Those motions are pending.

Splitrock Properties filed an action against Qwest, *Splitrock Properties, Inc. v. Qwest Communications Corporation*, Civ. 08–4172KES. Qwest filed counterclaims and a third party claim against Free Conferencing. Free Conferencing filed counterclaims against Qwest. Qwest's motion to dismiss Free Conferencing's counterclaims and motion to join Alliance Communications Cooperative, Inc. as a counterclaim defendant are pending.

Apparently unhappy with the decisions issued in the District of South Dakota, Sancom and Northern Valley filed actions against AT & T, Qwest, and XO in the Southern District of New York. Those cases were transferred to the District of South Dakota. Those cases are *Sancom, Inc. v. AT & T Corp.*, Civ, 08–4211KES, *Northern Valley Communications, LLC v. AT & T Corp.*, Civ 09–1003CBK, and *Northern Valley Communications, LLC v. Qwest Communications*, Civ 09–1004CBK.[3] A motion for judgment on the pleadings based upon the filed rate doctrine is pending in *Sancom v. AT & T*, Civ. 08–4211. As previously set forth, motions to dismiss claims filed by both Northern Valley and Qwest are pending in the present action, Civ. 09–1004.

Splitrock Properties filed an action against Sprint, *Splitrock Properties, Inc. v. Sprint Communications Company Limited Partnership*, Civ. 09–4075KES. Sprint filed counterclaims against Splitrock in that action. Sprint's motion to dismiss some of the plaintiff's claims based upon the filed rate doctrine is pending.

United States District Judge Joan N. Ericksen issued an opinion in July of 2009, staying and referring to the FCC *Tekstar Communications, Inc. v. Sprint Communications Company*, D. Minn. Civ 08–1130, Doc. 145 (now assigned to Chief Judge Michael J. Davis). Also pending in the District of Minnesota are: *Qwest v. Tekstar*, D, Minn. Civ. 10–490 MJD, and *Mid–Communications, Inc. v. Sprint*, D.Minn. 09–3496–MJD (formerly District of Virginia No. 1:09–cv–01124). There may be others.

In February and March of 2008, United States District Judge James E. Gritzner stayed four of the actions pending in the Southern District of Iowa pending the FCC's final ruling in *Farmers & Merchants*. Those cases are *Aventure Communications Technology, LLC v. Sprint and Qwest* No. 4:08–cv–0005–JEG, *AT & T v. Superior Telephone Cooperative, et al.*,

---

**3.** *Northern Valley Communications LLC v. XQ Communications Services, Inc.*, Civ. 09–1002 was voluntarily dismissed by plaintiff on May 7, 2009.

No. 4:07–cv–043–JEG, *Qwest v. Superior Telephone Cooperative, et al.*, No. 4:07–cv–078–JEG, and *Sprint v. Superior Telephone Cooperative, et al.*, No. 4:07–cv–194–JEG. Just prior to the FCC's opinion in *Farmers II*, Aventure moved to lift the stay in all four cases. Following the issuance of *Farmers II*, Aventure filed a supplemental motion for referral to the FCC and Qwest filed motions to lift the stay in its cases, contending that *Farmers II* set forth sufficient guidance for the district courts to enter rulings on the various pending motions in those cases. As of March 17, 2010, those motions were still pending.

Southern District of Iowa cases stayed in 2009 include *The Farmers & Merchants Mutual Telephone Company of Wayland, Iowa, et al. v. MCI d/b/a/ Verizon*, S.D. Iowa No. 3:09–cv–00055–JEG (consolidated with No. 3:09–cv–00059–JEG), *The West Liberty Telephone Company, et al v. MCI d/b/a Verizon*, S.D. Iowa 3:09–cv–00056–JEG, *MCI d/b/a Verizon v. The Farmers & Merchants Mutual Telephone Company of Wayland, Iowa, et al.*, S.D.Iowa No. 3:09–cv–00059–JEG, *Spencer Municipal Communications Utility v. Global Crossing*, S.D, Iowa No. 4:09–cv–00029–JEG, and *Interstate 35 Telephone Company d/b/a Interstate Communications Company v. MCI d/b/a Verizon*, S.D. Iowa No. 4:09–cv–00213–JEG.

Also pending in the Southern District of Iowa are: *BTC, Inc. d/b/a/ Western Iowa Networks v. Sprint*, S.D. Iowa No. 4:09–cv–00465–JEG (formerly N.D. Iowa No. 09–3068), *Iowa Network Services, Inc. v. Sprint*, S.D. Iowa No. 4:10–cv–00102–JEG (formerly D. Kansas No. 09–cv–2393), *The Farmers & Merchants Mutual Telephone Company of Wayland, Iowa v. Qwest*, S.D. Iowa No. 3:09–cv–0058–JEG (consolidated with 4:07–cv–078 and stayed), *Searsboro Telephone Company, Inc. v. Qwest*, S.D.

Iowa No. 4:09–cv–00308–JEG (formerly D.D.C. No. 1:09–cv–01116), *Spencer Municipal Communications Utility v. MCI d/b/a/ Verizon*, S.D. Iowa No. 4:09–cv–00220–JEG, *MCI d/b/a/ Verizon v. Sully Telephone Association, Inc.*, S.D. Iowa No. 4:09–cv–00262–JEG, and *Sully Telephone Association, Inc. v. MCI d/b/a/ Verizon*, S.D. Iowa No. 4:09–cv–00415–JEG (formerly D.D.C. No. 1:09–cv–1182, consolidated with 4:09–cv–00262). There may be others.

Pending in the Northern District of Iowa are: *MCI d/b/a Verizon v. Global Conference and Futurephone.com*, N.D. Iowa No. 5:07–cv–04095–JEG (lead case) (stayed), *Futurephone.com LLC v. MCI d/b/a Verizon*, N.D. Iowa No. 5:09–cv–04017–JEG (formerly S.D. Iowa No. 4:08–cv–00390) (consolidated with previous case and stayed), *MCI d/b/a Verizon v. Readlyn Telephone Company*, N.D. Iowa No. 6:09–cv–02035–EJM, *Redlyn Telephone Company v. MCI, d/b/a Verizon*, N.D. Iowa No. 6:09–cv–02053–EJM (consolidated with 09–2035), *Great Lakes Communications Corp. v. Global Crossing*, N.D. Iowa No. 5:09–cv–04056–DEO (motion for stay denied), *Great Lakes Communications Corp. v. Level 3 Communications, LLC*, N.D. Iowa No. 5:09–cv–04090–JEG (formerly D.D.C. No. 1:09–cv–00888), *Northwest Iowa Telephone, LLC v. MCI d/b/a Verizon*, N.D. Iowa No. 5:09–cv–04103–MWB, and *Sprint v. Northwest Iowa Telephone Company*, N.D.Iowa No, 5:10–cv–04004–MWB. Again, there may be others.

So-called traffic pumping cases are not limited to this Circuit. There are also cases pending in California. *See North County Communications Corp v. Verizon Global*, S.D. Cal. No. 08–cv–01518 BEN.

The FCC issued its Second Order on Reconsideration in *Qwest Communications Corporation v. Farmers & Merchants Mutual Telephone Company*, FCC

File No. EB–07–MD–001, 24 F.C.C.R. 14801, 2009 WL 4073944 (F.C.C. November 25, 2009) ("*Farmers II*"). In that order, the FCC ruled that, based upon the facts in that case, including a careful reading of the applicable tariff and the relationship between Farmers & Merchants and the conference calling companies involved, the conference calling companies were not "end users" or "customers." The FCC therefore concluded that the services Farmers provided to Qwest to terminate the calls of the conference calling companies were not "switched access service" as defined in Farmers' tariff. "We therefore conclude that Farmers' practice of charging Qwest tariffed switched access rates for its termination of traffic from the conference calling companies is unjust and unreasonable in violation of section 201(b) of the Act." *Id.*

Inexplicably, following the release of *Farmers II*, plaintiff CLEC's in some of the cases pending in the District of South Dakota filed motions to stay and refer the cases to the FCC for a determination of whether, under the facts of each case, plaintiff CLECs are entitled to collect switched access charges under their tariffs for calls to numbers assigned to the third party defendants. Motions to stay and refer were filed in *Sancom v. Sprint*, Civ. 07–4107, *Sancom v. Qwest*, Civ. 07–4147, *Northern Valley v. Sprint*, Civ. 08–1003, and *Sancom v. AT & T*, Civ. 08–4211. Judge Schreier granted the motions to stay and refer in each of those cases. *Sancom, Inc. v. Qwest Communications Corp.*, 2010 WL 960005 (D.S.D. March 12, 2010), *Sancom, Inc. v. AT & T Corp.*, 696 F.Supp.2d 1030 (D.S.D.2010), *Sancom, Inc. v. Sprint Communications Co. Ltd. Partnership*, 2010 WL 936718 (D.S.D. March 15, 2010), and *Northern Valley Communications, LLC v. Sprint Communications Co. Ltd. Partnership*, 2010 WL 936723 (D.S.D. March 15,2010). Motions to stay

and refer are pending in *Northern Valley v. Sprint*, Civ. 09–1003, and *Northern Valley v. Qwest*, Civ 09–1004 (this case). Judge Schreier ordered the parties in *Splitrock v. Sprint*, Civ 09–4075, to brief whether that matter should be stayed and referred. No motions to stay and refer were filed in the consolidated cases of *MCI d/b/a Verizon v. Global Conference* and *MCI d/b/a Verizon v. Free Conference*, Civ. 07–1016, or in *Splitrock v. Qwest*, 08–4172.

Just prior to the FCC's opinion in *Farmers II*, Aventure moved to lift the stay in all four cases in which it was a party in the Southern District of Iowa, *Aventure Communications Technology, LLC v. Sprint and Qwest*, No. 4:08–cv–0005–JEG, *AT & T v. Superior Telephone Cooperative, et al.*, No. 4:07–cv–043–JEG, *Qwest v. Superior Telephone Cooperative, et al.*, No. 4;07–cv–078–JEG, and *Sprint v. Superior Telephone Cooperative, et al.*, No. 4:07–cv–194–JEG. Following the issuance of *Farmers II*, Aventure filed a supplemental motion for referral to the FCC and Qwest filed motions to lift the stay in its cases, contending that *Farmers II* set forth sufficient guidance for the district courts to enter rulings on the various pending motions in those cases. As of March 17, 2010, those motions were still pending.

### DECISION

Where, as here, the plaintiff has moved for dismissal under Fed.R.Civ.P. 12(b)(1), as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss [a claim] for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969), *cf., Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)

(motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the district count must accept the allegations of the complaint as true and must construe them liberally in plaintiffs' favor. *Stufflebeam v. Harris,* 521 F.3d 884, 886 (8th Cir.2008), *Quinn v. Ocwen Federal Bank FSB,* 470 F:3d 1240, 1244 (8th Cir.2006), *Booker v. City of St. Louis,* 309 F.3d 464, 467 (8th Cir.2002), *Duffy v. Landberg,* 133 F.3d 1120, 1122 (8th Cir.1998), *Whisman ex rel. Whisman v. Rinehart,* 119 F.3d 1303, 1308 (8th Cir.1997), and *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996). Dismissal under Fed. R.12(b)(6) is appropriate only when it "appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir.2007) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## I. STANDING.

"Article III, § 2, of the Constitution restricts the federal "judicial Power" to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Communications Co., L.P. v. APCC Services, Inc.,* 554 U.S. 269, ——, 128 S.Ct. 2531, 2535, 171 L.Ed.2d 424 (2008). "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.' " *Kowalski v. Tesmer,* 543 U.S. 125, 128, 125 S.Ct. 564, 567, 160 L.Ed.2d 519 (2004) (*quoting Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

■ The requisite elements of Article III standing are that "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342, 126 S.Ct. 1854, 1861, 164 L.Ed.2d 589 (2006) (*quoting Allen v. Wright,* 468 U.S. 737, 750, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The redressability inquiry focuses "on whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint v. APCC Services,* 554 U.S. at ——, 128 S.Ct. at 2542.

■ In addition to Article III standing, a plaintiff must satisfy the prudential standing limits. The United States Supreme Court has explained that

> prudential standing encompasses "the general prohibition on a litigants raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiffs complaint fall within the zone of interests protected by the law invoked."

*Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 12, 124 S.Ct. 2301, 2309, 159 L.Ed.2d 98 (2004) (*quoting Allen,* 468 U.S., at 751, 104 S.Ct. 3315). The prudential limits of standing may be relaxed by congressional action. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Where the Article III requirements are satisfied, "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim." *Id.*

## A. COUNT IV—Illegal Rebate in Violation of 47 U.S.C. § 203.

47 U.S.C. § 203(c) provides, inter alia, that "no carrier shall . . . refund or remit by any means or device any portion of the charges so specified [in the filed schedules]." Qwest contends in its counterclaim that Northern Valley's alleged practice of paying "marketing fees" to conference calling companies amounts to an illegal rebate under § 203(c)(2). Qwest contends that it has suffered economic harm as a result of Northern Valley's provision of illegal rebates.

■ Qwest alleged in its counterclaims that Northern Valley engaged in a scheme. One of the allegations of the scheme included Northern Valley paying illegal rebates to Global Conference, which illegal rebates were funded by illegally charging Qwest call terminating fees. We assume that Qwest's allegations are true for the purposes of the jurisdictional analysis. *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir.2009). A finding that Northern Valley's scheme does violate § 203 may result in a judgment that Qwest was not and is not obligated to pay the fees at issue in this litigation. The Court is cognizant of the alternative claims of Northern Valley that, even if Northern Valley was not entitled under its tariffs to bill Qwest for call termination fees for the calls at issue in this litigation, Northern Valley should nonetheless recover some payment under another theory. I cannot say at this stage of the litigation that Qwest has not shown redressability. Article III standing is satisfied.

Northern Valley alleges that Qwest is asserting the rights of others, namely those telephone companies that compete with Northern Valley, rather than Qwest's own rights. However, Congress specifically authorized "any person" to "bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction." 47 U.S.C. § 207. Assuming, arguendo, that Qwest is asserting the rights of others, such action has been authorized by Congress.

This Court has jurisdiction over the parties and the subject matter of this dispute. Whether or not Qwest has standing to pursue any particular alternative theory of relief, this court's jurisdiction generally would not be precluded. The Eighth Circuit has recognized that the jurisdictional issue and substantive issues can be so intertwined that a full trial on the merits may be necessary to resolve the issue. *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990). *See also Whalen v. United States*, 29 F.Supp.2d 1093, 1095–96 (D.S.D.1998). This maybe such a case as to this particular cause of action and the count should not be dismissed.

## B. COUNT V—Unlawful Discrimination in Violation of SDCL 49–31–11.

SDCL 49–31–11 provides, inter alia, that "[n]o person or telecommunications company may unjustly or unreasonably discriminate between persons in providing telecommunications services or in the rate or price charged for those services . . . Nothing in this section may alter or eliminate any remedy otherwise available to an injured party, including an injured party's right to initiate a suit against the company guilty of discrimination pursuant to § 49–13–14.1." Qwest contends that, if the conference calling companies are in fact end users, Northern Valley is unlawfully discriminating by paying those end users a marketing fee not offered to its other customers. Qwest contends that it has suffered economic harm as a result of Northern Valley's unlawful discrimination.

Northern Valley counters that Qwest is not a customer and therefore has no standing to assert this claim.

■ Qwest satisfies the Article III standing requirements for this claim. Qwest alleges that Northern Valley's illegal discriminatory practice is being funded in part by charges to Qwest. Qwest seeks not only damages but a declaratory judgment that Northern Valley's scheme violates state and federal law. Redressability has been shown. I have set forth above the prudential limits of standing as applied to this case. I find that the prudential limits do not prohibit this court from exercising jurisdiction over Qwest's claims in Count V.

## II. FAILURE TO STATE A CLAIM.

### A. COUNT VI—Unlawful Cross–Subsidization in Violation of 47 U.S.C. §§ 254(k), 206, 207.

47 U.S.C. § 254(k) provides, inter alia, that "[a] telecommunications carrier may not use services that are not competitive to subsidize services that are subject to competition." Qwest contends that Northern Valley has unlawfully subsidized its competitive local exchange services through the use of monies derived from charging Qwest for claimed terminating access services, which are charged pursuant to a non-competitive tariff. Qwest contends that it has suffered economic harm as a result of Northern Valley's unlawful cross-subsidization.

■ Northern Valley contends that Qwest has failed to state a claim upon which relief can be granted as to counterclaim VI. I cannot find, on the record before me, that it appears beyond doubt that Qwest can prove no set of facts in support of their claim which would entitle them to either monetary or declaratory relief or both. Count VI should not be dismissed.

### B. COUNT III—47 U.S.C. § 202(a).

Global Conference contends, in Count III of its counterclaim against Qwest, that Qwest engaged in illegal self-help by refusing to pay, pursuant to Northern Valley's tariffs, terminating access charges associated with conference calls placed through Global Conference. Qwest contends that it was acting solely as a customer, not a common carrier, when it withheld payments to Northern Valley (a portion of which payments allegedly were to be paid by Northern Valley to Global Conference).

■ The facts as to the relationship between Northern Valley and Global Conference and Qwest's obligation to pay or not pay the terminating access charges at issue in this litigation are certainly contested and, at this point, not clear. I cannot find, on the record before me, that it appears beyond doubt that Global Conference can prove no set of facts in support of their claim which would entitle them to either monetary or declaratory relief or both.

### ORDER

Based upon the foregoing,

IT IS ORDERED:

1. Northern Valley's motion, Doc. 58, to dismiss Counts IV, V, and VI of Qwest's counterclaims is denied,

2. Qwest's motion, Doc. 86, to dismiss Count III of Global Conference's counterclaims is denied.